No. 73–6810. GENTILE *v.* UNITED STATES. C. A. 5th Cir. Certiorari denied.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE MARSHALL concurs, dissenting.

Petitioner was questioned by Texas police officers in connection with the burglary of a store. After receiving *Miranda* warnings, petitioner admitted participation in the robbery and disclosed that certain stolen articles could be found in his apartment. The police decided to search the apartment for the stolen goods. Instead of obtaining a warrant, however, the police officers presented petitioner with a "consent form," which he signed. By signing the form he authorized the police "to take from my premises and property, any letters, papers, materials or any other property or things which they desire as evidence for criminal prosecution in the case or cases under investigation."

The police then went to petitioner's apartment in search of four boxes of gum and a small radio, goods known to have been taken in the store burglary. In the course of searching for these items, one of the searching officers found a check lying on a bureau. The check was partly obscured by an article of clothing, but the officer testified that a protruding stub allowed him to determine that the payee was a person other than petitioner. The officers

seized the check, and subsequent investigation revealed that it had been stolen. The officer's discovery formed the basis for petitioner's prosecution in the District Court for mail theft, 18 U. S. C. § 1708. Prior to trial, petitioner unsuccessfully moved to suppress the stolen check as evidence, asserting that the seizure of it violated the Fourth Amendment. Petitioner's conviction followed and the denial of the motion to suppress was held proper on the ground that petitioner had consented to the search of his apartment.

Since there is no contention that the police could otherwise have searched petitioner's apartment without first obtaining a warrant, the lawfulness of their search turns on whether petitioner's signing of the consent form relieved the police of this obligation. If this consent form has any validity, seizure of the stolen check from petitioner's residence is outside its scope. The form signified consent to seizure of property "as evidence . . . in the case or cases under investigation." At the time petitioner signed the form he had been questioned and charged with the burglary of a particular store. Thus his reasonable expectations, which must govern construction of the document, were that he was authorizing the police to search his residence for evidence in connection with the only crime for which he was then a suspect.[1]

---

[1] The Government argues that the seizure can nevertheless be justified under the "plain view" doctrine. But under our decisions, the "plain view" doctrine permits a seizure only where officers already searching under lawful authority make an unanticipated discovery of an object whose incriminating character is immediately apparent. See *Coolidge* v. *New Hampshire*, 403 U. S. 443, 464–471 (1971). These requirements are not met in this case. When the police entered petitioner's house they had no reason to believe that a piece of paper on his bureau, only partially in view, was the fruit of another crime. There was nothing incriminating about a slip of paper protruding from a piece of clothing on petitioner's bureau. The carefully confined "plain view" exception discussed in *Coolidge*, if extended to cover this case, would likewise validate the seizure

Wholly apart from the question of the scope of consent, I would grant certiorari to consider whether the record adequately demonstrates that petitioner gave an informed consent to search. Although petitioner had received *Miranda* warnings, the record is silent as to whether petitioner knew, prior to signing the consent form, that he had a right to refuse and require the police to obtain a warrant. Since in my view waiver of Fourth Amendment protections requires an "intentional relinquishment or abandonment of a known right or privilege," *Johnson* v. *Zerbst*, 304 U. S. 458, 464 (1938), I would require an affirmative showing in the record that petitioner knew he had a right to refuse. While I need not here decide whether a warning would be required in every case, I note that the surest method of demonstrating that the accused had waived a *known* right is a showing that the officers advised him of it by a statement patterned on the warning mandated by *Miranda* v. *Arizona*, 384 U. S. 436 (1966).

In *Schneckloth* v. *Bustamonte*, 412 U. S. 218 (1973), the Court held that the absence of a warning did not vitiate consent to a search in a noncustodial setting, specificially reserving the question of the significance of custodial conditions, *id.*, at 247 n. 36. The Court believed that warning the subject of his right to refuse would be "impractical" under the "informal and unstructured conditions" of a roadside search. *Id.*, at 231–232. Yet the circumstances under which an arrestee in police custody meets with his captors are hardly "unstructured." When a suspect is in custody the situation is in control of the police. The pace of events will not somehow deny them an opportunity to give a warning, as the Court apparently feared would happen in noncustodial settings. Moreover, the custodial setting will permit easy docu-

---

of a book, not covered by the warrant, but later determined to be obscene.

mentation of both the giving of a warning and the arrestee's response.

The giving of a warning does not, of course, rule out the possibility that coercive tactics may be used to secure consent. But an affirmative communication that a right to refuse consent will be respected may serve to fortify the accused against the coercion inherent in the custodial setting. See *Miranda* v. *Arizona, supra,* at 468. These considerations are especially compelling where, as here, the police procurement of consent is an outgrowth of custodial interrogation. Before signing the consent form the petitioner had been in custody seven hours, and subjected to interrogation that eventually resulted in a confession.

By proceeding on the basis of a "consent" form the police circumvent three important protections of the warrant procedure. First, they avoid submitting to a magistrate's independent assessment of probable cause. Second, they are spared the necessity of making a record, in the form of an affidavit sworn to prior to the search, that guards against the possibility that an *ex post facto* justification will be based upon what the search turns up. Finally, to the extent the police use, as they did here, a boilerplate consent form, they are relieved of the particularity requirement of the warrant.[2]

Efforts by the police to proceed outside the warrant procedure by procuring consent from persons in police custody should be viewed carefully and critically. I would grant certiorari.

---

[2] The Fourth Amendment provides in part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." In contrast to the requirement of particularity is the wording of the "consent" form in this case, authorizing seizure of "any letters, papers, material or any other property or things which [the police] desire as evidence for criminal prosecution in the case or cases under investigation."