**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kendra L. CALHOUN, Defendant–
Appellant.**

No. 94–5222.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 29, 1994.

Decided March 14, 1995.

gram of cocaine under 21 U.S.C. § 841(a)(1). She raises several issues on appeal related to both her conviction and her sentence. On review we find no prejudicial error and affirm.

## FACTUAL BACKGROUND

The police intercepted a kilogram of cocaine when a United Parcel Service ("UPS") employee opened a package addressed to "Sean Johnson." The police arranged for the controlled delivery of the package to Sean Johnson at the address indicated on the shipping label. When the delivery was made, Kendra Calhoun opened the door, identified herself as Sean Johnson, signed for the package, and took possession of it.[1] She was immediately arrested and placed in handcuffs. By pre-arranged plan, other officers entered the apartment and conducted a "sweep." They had no prior knowledge anyone was inside. They found two men and an infant. The officers had neither an arrest nor a search warrant.

According to police Sergeant Burton, Calhoun, who was dressed in only a T-shirt and shorts, asked if she could go back into the apartment because she was cold. At trial, Calhoun admitted this and stated as well that her two-month-old baby was inside crying and she was concerned about him. Once inside, Calhoun was given her *Miranda* rights. Calhoun did not request an attorney and agreed to answer questions. She said she lived in the apartment. She told the officers the package belonged to "Tony Johnson" and gave them a pager number for him. When shortly later the number turned out to be invalid, Calhoun admitted there was no "Tony Johnson." At trial, Calhoun said she lied to stall the police until a friend could come and pick up her baby. She maintained she did not know what was in the package. She testified it was sent to her boyfriend, Kevin Fisher, who lived in the apartment and was the father of her infant son.

John T. Fowlkes, Asst. U.S. Atty., Victor L. Ivy (argued and briefed), Memphis, TN, for plaintiff-appellee.

Edward Witt Chandler (argued and briefed), Memphis, TN, for defendant-appellant.

Before: KEITH, NELSON, and LAY,* Circuit Judges.

LAY, Circuit Judge.

Kendra L. Calhoun was convicted of possession with the intent to distribute one kilo-

---

* The Honorable Donald P. Lay, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. Calhoun denies the police version. She states the police told her to sign as "S. Johnson" and that she never took possession of the package.

After having received her *Miranda* rights, Calhoun was given a consent form[2] to sign so the police could search her apartment. She signed it. Asked whether any weapons were in the apartment, Calhoun told the officers a shotgun was under the bed. The officers retrieved the gun. They also seized various documents, including cash receipts for many items of value in the apartment and UPS forms.

When Calhoun was taken to jail, she was questioned by officers as to how she had acquired the furniture in her apartment. She admitted that some of the furniture had been paid for by Kevin Fisher with money he originally acquired by "selling dope."

On December 17, 1993, a jury convicted Calhoun of possessing cocaine with intent to distribute. The presentence report calculated Calhoun's offense level as twenty-six based on the amount of cocaine in the package, U.S.S.G. § 2D1.1, plus two levels for possession of a firearm, U.S.S.G. § 2D1.1(b)(1). She was sentenced on February 24, 1994, to eighty-seven months in prison followed by supervised release for five years.

## THE TRIAL

Calhoun's motion to suppress the weapon, the statements she made to police while being taken to jail, and various documents found in the apartment was denied. She claims this was error because the pre-arranged sweep was unconstitutional under *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Although the sweep did not lead to the discovery of any evidence, she contends it was instrumental in causing her to consent to the search and to make the statements she sought to suppress.

2. Quoted in note 4, *infra*.

3. Because Calhoun was arrested outside her apartment, a warrantless search of the apartment could be justified only if the officers had a specific, reasonable basis for believing either that they were in danger from persons inside, as analyzed in *Buie*, or that evidence might be destroyed, as analyzed in *Vale v. Louisiana*, 399 U.S. 30, 33–34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970). *See also United States v. Hatcher*, 680 F.2d 438, 444 (6th Cir.1982) (explaining that concluding a protective sweep is justified solely

■ Although we agree with Calhoun the sweep of her apartment was illegal,[3] the evidence seized did not turn on the unauthorized sweep. Both sides agree that no evidence was obtained as a direct result of the illegal sweep. The government asserts that Calhoun's voluntary consent to the second search provided an independent source for the seizure of the firearm and the other evidence obtained. *See Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988); *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). Calhoun's consent to the search was voluntary as evidenced by her freely signing the consent form and by the testimony of the officers.

As the Court stated in *Murray*, the independent source doctrine rests "upon the policy that, while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied." 487 U.S. at 482, 108 S.Ct. at 2501. The Government did not profit from the illegal search because the sweep did not yield incriminating evidence. Calhoun's consent, like the search warrants in *Murray* and *Segura*, was not obtained on the basis of any information garnered during the illegal search.

■ Calhoun insists the Government did benefit from the unlawful search because it was an important element in creating a coercive atmosphere that led to her consent. Generally, it can be said the validity of a person's consent "is a question of fact to be determined from the totality of the circumstances" and the district court's findings will not be reversed unless clearly erroneous. *United States v. Taylor*, 956 F.2d 572, 577 (6th Cir.) (quoting *Schneckloth v. Busta-*

on the basis of arresting someone for a drug crime involves reasoning "to easily applied to any number of categories of criminal arrests, and would permit wholesale abrogation of the Fourth Amendment reasonableness requirement...."). The pre-arranged plan to sweep the apartment was made without any knowledge of the apartment or its occupants. There was no basis on which the officers could fear danger to themselves or the destruction of any potential evidence.

*monte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973)), *cert. denied,* — U.S. ——, 113 S.Ct. 404, 121 L.Ed.2d 330 (1992); *see United States v. French,* 974 F.2d 687, 693 (6th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1012, 122 L.Ed.2d 160 (1993). *But cf. Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968) (holding there is no consent, as a matter of law, where the "consent" was given under coercion).

 After her arrest, Calhoun was read her *Miranda* rights and signed a form consenting to the search.[4] There is no indication in the record that Calhoun did not comprehend what was said to her. Although Calhoun testified she was thrown to the ground by the arresting officer, the district court believed Officers Burton and McCoy who testified to the contrary. Several officers described Calhoun as having been polite and cordial after the initial shock of her arrest had passed. As a whole, the record does not suggest Calhoun was physically or mentally abused. Her handcuffs were removed when she was brought inside her apartment out of the cold. The officers did not require Calhoun's consent to the search as a condition of bringing her baby to her or threaten her in any way. They allowed Calhoun to attempt to contact friends or relatives who might take care of the baby while she was taken to jail.

The district court's finding that Calhoun's consent was voluntary is not clearly erroneous. Her consent made the subsequent warrantless search of her apartment legal.[5]

## MIRANDA VIOLATIONS

 Calhoun contends the *Miranda* warnings were given in a "coercive atmosphere" immediately after her arrest. Further, they were not reread when she was later interrogated while being taken to jail. For these reasons, she believes her *Miranda* rights were violated.

We agree with the trial court's conclusion following the suppression hearing that Calhoun failed to prove she was a victim of coercive police activity. On the whole, the record suggests that on arrest, Calhoun was informed of her rights and indicated she understood them. She did not invoke her right to an attorney. Exchanges between Calhoun and police officers were cordial. She was not subject to any threats and was given her baby when she asked for it and allowed to make arrangements for its care. "[T]he 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension" on Calhoun's part to support

4. A dissent by Justice Douglas, at 419 U.S. 979, 981–82, 95 S.Ct. 241, 242, 42 L.Ed.2d 191 (1974), to the order denying certiorari in *United States v. Gentile,* 493 F.2d 1404 (5th Cir.), and a dissent by Justice Marshall in *United States v. Watson,* 423 U.S. 411, 433, 96 S.Ct. 820, 832, 46 L.Ed.2d 598 (1976), both observe a key test of the validity of a consent to a search given by a person in custody is whether the person was informed consent could be refused. The form Calhoun signed stated that she consented,

> having been duly informed of my Constitutional Rights to:
> 1. Refuse to give my Consent to Search.
> 2. Ask for a Search Warrant to be produced to show probable cause under the Fourth Amendment to the Constitution of the United States.
> 3. To revoke my Consent to Search at any moment.
> I understand that in giving my Consent to Search, any evidence found during the search can be used against me in a Criminal or Civil proceeding. After being advised of my Constitutional Rights, I consciously, intelligently, and

voluntarily waiver [sic] my rights, hereby described, in giving consent to such search.... I have not been physically or mentally threatened. No promises of any kind have been made to me, and no pressure of any kind has been used against me to give my Consent to Search.

The form, if read and understood, fully meets the concerns of Justices Douglas and Marshall.

5. Calhoun also argues that the package was opened by UPS employees acting as government agents in violation of the Fourth Amendment. Testimony by several witnesses explained that a UPS employee notified the police only after opening the package. The Fourth Amendment does not apply to private parties. *See United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). Defense counsel was unsuccessful in eliciting any testimony that provided a basis for inferring UPS employees were acting as government agents. Calhoun's bare allegation to the contrary is no ground for overturning the district court's finding.

the district court's conclusion that Calhoun knowingly and voluntarily waived her rights under *Miranda*. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979)). We agree with the Government that Calhoun's *Miranda* warnings had not "expired" by the time she was taken to jail.[6]

## SUFFICIENCY OF EVIDENCE

■ Calhoun argues the evidence presented at trial was insufficient to convict her, asserting the Government failed to prove she had knowledge the package contained cocaine. In reviewing this challenge, we consider "the evidence in the light most favorable to the government" and make "all reasonable inferences in the government's favor." *United States v. Poulos*, 895 F.2d 1113, 1117 (6th Cir.1990) (citing *United States v. Tilton*, 714 F.2d 642, 645 (6th Cir. 1983) (per curiam).

On the basis of trial testimony, a reasonable juror could conclude beyond a reasonable doubt that Calhoun was guilty of possession of cocaine with intent to distribute. It is undisputed that she signed a false name for the package, that the package contained a kilogram of cocaine, and that she lied when she told the police the package was for "Tony Johnson." The jury could readily infer from these undisputed facts and from the testimony of several police officers, from her own statements, and from physical evidence seized at her apartment, that Calhoun knew cocaine was in the package. The jury did not have to accept Calhoun's testimony to the contrary.

6. Calhoun further claims the district court erroneously refused to allow her to exercise her constitutional right to inform the jury of the punishment she was potentially subject to and of the jury's power to nullify a law or sentence. We find no error in the court's refusal of this request. *See United States v. Fraser*, 709 F.2d 1556, 1559 (6th Cir.1983) (stating "[t]he trial court is surely not required to instruct the jury, as requested by appellant, that it has the power 'not to follow the instructions of the court,' or

## SENTENCING

*Possession of Firearm—U.S.S.G. § 2D1.1(b)(1)*

■ Calhoun asserts the court erred in increasing her offense level for sentencing by two points for possession of the shotgun under U.S.S.G. § 2D1.1(b)(1). Application Note 3 to section 2D1.1 states the two-level increase "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." Calhoun claims no evidence shows the gun was used in connection with drug trafficking.

■ The Government however, does not have to prove the gun was used. The Government meets its burden of establishing the applicability of section 2D1.1(b)(1) once it "proves a defendant was in possession of a weapon" during the commission of the offense. *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir.1991). Then the burden is on the defendant to show it is "clearly improbable" the weapon was connected with the offense. *United States v. Moreno*, 899 F.2d 465, 470 (6th Cir.1990), *cert. denied*, 503 U.S. 948, 112 S.Ct. 1504, 117 L.Ed.2d 643 (1992).

Calhoun fails to meet this burden. The gun seized from her apartment was a loaded twenty gauge shotgun and it was found under a bed. These circumstances are very different from those in *United States v. Garner*, 940 F.2d 172, 175 (6th Cir.1991), in which we found a defendant did show it was clearly improbable a gun was connected with his drug trafficking offense. In *Garner*, the gun in question was a single shot antique Derringer, described as a collector's piece,

that the jury 'has a general veto power.'"); *United States v. Davidson*, 367 F.2d 60, 63–65 (6th Cir.1966) (stating general rule is that jury has no concern with sentencing); *see also United States v. McDonald*, 933 F.2d 1519, 1526 (10th Cir.), *cert. denied*, 502 U.S. 897, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991); *United States v. Broxton*, 926 F.2d 1180, 1183 (D.C.Cir.), *cert. denied*, 499 U.S. 911, 111 S.Ct. 1118, 113 L.Ed.2d 226 (1991); *United States v. Thomas*, 895 F.2d 1198, 1200 (8th Cir.1990).

and was kept unloaded (indeed, no ammunition could be located for it in the building where it was found) in a locked safe at some distance from where the drugs were seized. *Id.* Calhoun's weapon was of a type associated with drug trafficking, was easily accessible, and was kept loaded. The district court did not err in giving Calhoun a two-level increase for possession of the gun.

*Downward Departure*

Lastly, Calhoun believes she is entitled to a downward departure because of her youth, because she is the mother of a fourteen-month-old infant, and because her crime consisted of unwittingly signing for a package containing cocaine (she denies she took possession of it). U.S.S.G. § 5H1.6 states that "[F]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.10 provides that age is not relevant in the determination of a sentence. The Guidelines, right or wrong, contemplate that innocent people may suffer as a result of a defendant's incarceration. *See United States v. Brewer,* 899 F.2d 503, 508 (6th Cir.), *cert. denied,* 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990). That Calhoun's infant may suffer does not give rise to an extraordinary circumstance that should be reflected in sentencing. Like the jury, the trial judge did not believe Calhoun's testimony that she did not know what was in the package. The record supports that finding.

We affirm Calhoun's conviction and her sentence.