70 F.3d 1273
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Peter Paul HANSEN, Defendant-Appellant.
 No. 94-1905.
 United States Court of Appeals, Sixth Circuit.
 Nov. 16, 1995.
 
 Before: KEITH, KENNEDY and RYAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant-Appellant, Peter Paul Hansen ("Hansen"), appeals the sentence imposed pursuant to his guilty plea for conspiracy to manufacture methcathinone in violation of 21 U.S.C. Secs. 846 & 841(a)(1), and possession of a listed chemical with the intent to manufacture methcathinone in violation of 21 U.S.C. Sec. 841(d)(1). Hansen contends that in imposing sentence under the United States Sentencing Guidelines ("U.S.S.G."), the district court erred by including two prior state of Michigan alcohol related offenses in his criminal history score. Hansen also claims that the district court incorrectly enhanced his offense level for possessing a firearm during a drug conspiracy. For the following reasons we AFFIRM the district court's findings.
 
 I.
 
 2
 On September 30, 1992, at approximately 2:20 in the morning, Michigan state police officers observed a vehicle with a broken tail light crossing the center line of a road. A traffic stop was conducted and the driver of the vehicle was identified as Hansen. A passenger was identified as Katherine Elizabeth Jeske ("Jeske"). During the stop, officers observed a rum bottle in the rear seat of the vehicle which prompted them to search the car. The officers' search uncovered, inter alia, a gram scale, a magnetic stirrer, two one-gallon size cans of acetone (a chemical used to manufacture methcathinone), four glass pyrex flasks and numerous hoses and rubber stoppers. Hansen was arrested and subsequently convicted for transporting an open intoxicant in violation of Michigan State law. He was sentenced for this misconduct on May 19, 1993, at which time he was ordered to serve 90 days in county jail. He was released from county jail, after serving his sentence, on August 27, 1993.
 
 
 3
 On October 11, 1992, at approximately 12:25 a.m., two law enforcement officers from the Michigan Department of Natural Resources observed a vehicle casting a spotlight on a field in violation of a state law that prohibits using an artificial light between the hours of 11 p.m. and 6 a.m. to locate wildlife. When the officers approached the vehicle, the driver accelerated the car for about a quarter of a mile before stopping. After the vehicle stopped, one of the officers approached the driver, who appeared to be drunk, while the other officer (Officer Webster) proceeded toward the passenger side of the car. As Officer Webster approached the passenger side of the car he observed Hansen in the front passenger seat with his hands between his knees and Jeske in the backseat. The record contains conflicting testimony about what happened next. According to Officer Webster, Hansen began to raise a handgun from between his legs using a two-handed grip. Webster claims that in response he immediately reached into the car and grabbed a .22-caliber handgun from Hansen. Hansen disputes Webster's testimony and asserts that he voluntarily handed the gun to Webster in a case.
 
 
 4
 Upon searching the vehicle the officers found a shotgun, a hunting bow, 27,000 ephedrine tablets, laboratory paraphernalia and a gallon jug half filled with liquid methcathinone. The handgun that was taken from Hansen had one live round in the chamber and nine live rounds in the magazine. The officers also found live ammunition in Hansen's pocket.
 
 
 5
 On October 9, 1993, police officers observed a vehicle run a stop sign in the city of Caspian, Michigan. When the officers activated their overhead lights, the car accelerated and attempted to escape. Officers pursued the fleeing vehicle for a short time until it spun out of control and came to a stop. Hansen was identified as the driver of the vehicle and was found to have a blood alcohol content of .18. Police found a liter bottle of whiskey, one third full, and three quarts of toluene--a drug used to manufacture methcathinone--inside the car. Hansen was subsequently arrested and served 90 days in county jail for driving under the influence of alcohol and having an open intoxicant in his car.
 
 
 6
 On October 14, 1993, a confidential informant told case agents that he had purchased one-half to one ounce quantities of methcathinone from Hansen on approximately six occasions. The informant also stated that he had assisted Hansen in obtaining the ingredients for producing methcathinone on two prior occasions.
 
 
 7
 Thereafter, on January 25, 1994, Hansen was federally indicted in a multi-count, multi-defendant indictment. The indictment, which detailed Hansen's above-mentioned encounters with police, contained one count of conspiracy to manufacture methcathinone, two counts of possession of a listed chemical with intent to manufacture methcathinone, and one count of possession of a firearm during and in relation to a drug trafficking offense. Hansen pled guilty to the conspiracy and manufacturing counts in exchange for the government dismissing the firearms possession charge.
 
 
 8
 At sentencing, Hansen received a total of 11 criminal history points. Hansen received two points for serving 90 days in county jail for transporting an open intoxicant on September 30, 1992. He received an additional two points, as a byproduct of this misconduct, for committing the instant federal offense within two years of his release from the above-mentioned 90 day state sentence. In addition, Hansen was given another two criminal history points for a 90 day state sentence he served for having an open intoxicant in his car and driving under the influence on October 9, 1993.[1] The district court also increased Hansen's base offense level by two (from 28 to 30) for his possession of a .22 caliber handgun during the commission of a drug offense on October 11, 1992. This offense level was subsequently reduced by three levels because Hansen accepted responsibility for his crime. The district court used Hansen's criminal history score and offense level computation to sentence him to 120 months in prison.
 
 II.
 
 9
 The first issue Hansen raises in this appeal is whether the district court erred by including his Michigan sentences in his criminal history score. We apply a clearly erroneous standard in reviewing factual findings made by a district court in imposing Guideline sentences. United States v. Escobar, 992 F.2d 87, 89 (6th Cir.1993). In addition, since the district court is best situated to review the credibility of witnesses, we give due deference to that court's application of the Sentencing Guidelines to the facts. United States v. Peters, 15 F.3d 540, 546 (6th Cir.), cert. denied, 115 S.Ct. 219 (1994).
 
 
 10
 The district court concluded that the state alcohol related charges for which Hansen was previously imprisoned were not for the same conduct as the federal charges to which he pled guilty. However, Hansen contends that because drugs and drug paraphernalia included in the federal indictment were found during stops that resulted in his Michigan convictions, the unlawful conduct that constituted those state charges is a part of the instant offense and cannot be considered for the purposes of calculating his criminal history score. To the contrary, the government asserts that Hansen's previous state convictions were severable from the instant federal offense and were thus properly included as prior sentences in Hansen's criminal history score.
 
 
 11
 In calculating a defendant's criminal history score, a district court must consider any prior sentences served by the defendant. U.S.S.G. Sec. 4A1.1. A prior sentence is defined as "any sentence previously imposed upon adjudication of guilt ... for conduct not part of the instant offense." U.S.S.G. Sec. 4A1.2(a)(1). As a result, we must determine whether Hansen's state alcohol convictions were for "conduct not part of the instant offense."
 
 
 12
 In United States v. Beddow, 957 F.2d 1330, 1338 (6th Cir.1992), a panel of this Circuit examined the meaning of the phrase "conduct not part of the instant offense" and concluded that,
 
 
 13
 [T]he appropriate inquiry is whether the "prior sentence" and the present offense involve conduct that is severable into two distinct offenses. This is necessarily a fact-specific inquiry that involves more than just a consideration of the elements of the two offenses. Factors such as the temporal and geographical proximity of the two offenses, common victims, and a common criminal plan or intent also must be considered.
 
 
 14
 (citation omitted). Following the inquiry in Beddow, it is clear that the conduct which formed Hansen's state alcohol related offenses was indeed severable from the conduct which formed his federal drug conspiracy and manufacturing charges. For instance, if the case had gone to trial, the Government would not have had to prove any of the elements of the alcohol-related offenses in order to obtain a conviction on the drug dealing charges. In addition, Hansen's alcohol related misconduct, which threatened the safety of other motorists and pedestrians, did not harm the same victims as his production and distribution of methcathinone offenses, which threatened the consumers of a highly addictive drug. Furthermore, the state offenses and the federal offenses did not involve a common plan or intent on the part of Hansen.
 
 
 15
 Indeed, the only factor that supports Hansen's position that the state charges are not severable from the federal offenses is that the unlawful conduct that constituted the state charges was discovered on the same occasion as some of the unlawful conduct that constituted the federal offenses. However, as we reasoned in Beddow, this factor alone is not enough to make two instances of unlawful conduct indivisible. See Beddow, 957 F.2d at 1339 (rejecting defendant's contention that a previous state conviction was for conduct that was part of the instant federal offense simply because the state violation--carrying a concealed weapon--was discovered at the time he was arrested for money laundering, because "[a]dopting such a broad interpretation of offense conduct would render almost every crime committed contemporaneously with some other offense part of that offense"). Accordingly, we conclude that the district court did not err in finding that Hansen's state and federal crimes were severable instances of unlawful conduct.
 
 III.
 
 16
 Hansen next claims that the district court erred when it increased his offense level by two points for possessing a firearm during the commission of a drug offense pursuant to U.S.S.G. Sec. 2D1.1(b)(1). In support of this claim, he attacks the credibility of the government's witness, Officer Webster, and asserts that the district court should have accepted his testimony that the .22-caliber handgun was only used for hunting and was handed to Officer Webster in a case when the car was stopped.
 
 
 17
 Once the government proves that a defendant possesses a weapon during the commission of a drug offense, the burden then shifts to the defendant to show that it was "clearly improbable" that the weapon was connected to that offense. United States v. Calhoun, 49 F.3d 231, 236 (6th Cir.1995). Here, Hansen has failed to show that it was clearly improbable that the gun was connected to his drug dealing activities. Hansen offers his testimony and that of his co-defendants to support his claim that the gun was only used for hunting purposes. However, if Hansen had been using the gun for hunting, logic dictates that he would not have picked it up while he was being interrogated by police officers. Rather, it was far more probable that the gun was in the car to protect the drugs contained in the back of the vehicle and that it may have been used for that purpose had Officer Webster not noticed the gun and disarmed Hansen. See United States v. Perkins, 994 F.2d 1184, 1192 (6th Cir.) (enhancement appropriate where loaded gun was found in glove compartment of truck being driven to drug trafficking rendezvous), cert. denied, 114 S.Ct. 279 (1993). As a result, the district court properly enhanced Hansen's offense level for possessing a firearm during the commission of a drug offense.
 
 IV.
 
 18
 For the foregoing reasons we AFFIRM the sentence imposed by the Honorable R. Allen Edgar, United States District Judge for the Western District of Michigan.
 
 
 
 [1]
 The other five criminal history points were not raised by Hansen on appeal and are thus not discussed in this opinion