**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0824n.06

**Nos. 10-6280, 10-6281, 10-6287, 10-6320, and 10-6400**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | |
| Plaintiff-Appellee, | ) | ***Aug 01, 2012*** |
| | ) | LEONARD GREEN, Clerk |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| TONY McALLISTER, CHARLES PATTERSON, | ) | TENNESSEE |
| STANLEY HUGHES, STACEY RATCLIFF, and | ) | |
| JESSICA WEEKS-SAVAGE | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before:  MOORE, GIBBONS, and ALARCÓN, Circuit Judges[*]

ALARCÓN, Circuit Judge.  Defendants-appellants Tony McAllister, Charles Patterson, Stanley Hughes, Stacey Ratcliff, and Jessica Weeks-Savage appeal from the district court's judgment sentencing them to various terms of imprisonment for conspiracy with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a) and (b)(1)(A).[1]  Patterson and Ratcliff contend

_____

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

[1]On April 27, 2011, this Court consolidated for briefing case numbers 10-6278, 10-6280, 10-6281, 10-6287, 10-6320, and 10-6400.  Given that some of the parties raise the same issues on appeal, we have issued this consolidated disposition for the case numbers listed above.  We issued the disposition for case number 10-6278 separately.

that the district court erred when it applied dangerous weapon enhancements to their sentences, pursuant to Section 2D1.1(b)(1) of the Sentencing Guidelines, because there was insufficient evidence connecting the firearm found in their bedroom with their drug trafficking offenses. Weeks-Savage contends that the district court erred by adding two criminal history points for her sixty-day sentence for violating the conditions of probation on a 2004 Georgia state obstruction conviction because she was not represented by counsel at the probation revocation hearing. Hughes and McAllister contend that the district court erred by imposing sentences that are procedurally and substantively unreasonable. For the reasons that follow, we affirm the district court as to McAllister, Patterson, Ratcliff, and Weeks-Savage. As for Hughes, we vacate his sentence and remand for re-sentencing.

I.

In 2003, law enforcement officers began investigating a methamphetamine conspiracy in Tennessee and Georgia. Officers learned that McAllister, Patterson, Hughes, Ratcliff, and Weeks-Savage were involved in the methamphetamine conspiracy. They later admitted to participating in the conspiracy and pleaded guilty to conspiracy with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a) and (b)(1)(A). They raised several different objections at their sentencing hearings, which the district court overruled. We address each appellant's arguments on appeal in turn.

II.

A.

Tony McAllister

McAllister contends that the district court erred because his sentence was procedurally and substantively unreasonable. We "review a district court's sentencing decisions 'under a deferential abuse-of-discretion standard'" for procedural and substantive reasonableness. *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). We review a district court's interpretation of the Sentencing Guidelines *de novo* and its "findings of fact at sentencing for clear error." *Id.*

1.

McAllister contends that his sentence was procedurally unreasonable because the district court: (1) failed to explain adequately the basis for its decision; (2) relied on erroneous facts or facts not in evidence; and (3) treated the Guidelines as presumptively reasonable. We disagree.

a.

McAllister has not established that the district court failed to explain adequately the basis for its decision. "A district court must explain the sentence it has chosen, but it is well-settled that it is not required to respond to every argument raised by the defendant." *United States v. Judge*, 649 F.3d

453, 457 (6th Cir. 2011). A court's failure to discuss an argument does not necessarily mean that the court ignored the argument. *United States v. Simmons*, 501 F.3d 620, 626 (6th Cir. 2007) [hereinafter *Simmons I*]. "The level of detail required in the court's explanation will vary from case to case, and the underlying inquiry is 'whether the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances[,] and took them into account in sentencing him.'" *Judge*, 649 F.3d at 458 (alteration in original) (quoting *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc)). A "within-Guidelines sentence[] need not be explained with the same level of detail as [a] non-Guidelines sentence[]." *Id.*

The district court acknowledged and rejected McAllister's argument that the Guidelines for methamphetamine offenses conflict with the sentencing goals of 18 U.S.C. § 3553(a). The district court explained that the Guidelines for methamphetamine offenses reflect Congress's judgment, as adopted by the Sentencing Commission, that methamphetamine offenses require stiff punishment.

In rejecting McAllister's argument that he is "outside the heartland" of methamphetamine cases, the district court explained that McAllister's situation is "typical; it is not atypical" because many first-time offenders have "good work histories" and "supportive families, but because of the addictive nature of methamphetamine, all those things become secondary when they become involved . . . in criminal activities." R. 629 at 118-19.

The district court acknowledged and rejected his argument that a sentence of home detention or time served was appropriate. The district court explained that Congress has "determined that people such as Mr. McAlister [sic] should receive punishment greater than home detention and probation for their activities." *Id.* at 122. It stated that it did not "think anyone can say that Congress's judgment was misplaced there." *Id.* at 123. The district court concluded that the Guidelines reflect Congress's judgment that methamphetamine offenders should "receive a period of incarceration as opposed to home detention or probation or time served." *Id.*; *see generally Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) (explaining that Congress established the Commission to formulate national sentencing standards because the Commission "has the capacity courts lack" to analyze appropriate sentencing standards).

The district court was not required to explain why the articles and studies regarding recidivism that McAllister attached to his sentencing memorandum were not persuasive. These articles, while potentially instructive, are not binding precedent. Moreover, McAllister has not established that the district court ignored or failed to consider these materials. *See Simmons I*, 501 F.3d at 626 ("Lack of discussion will not mean that the district court ignored the factor.").

b.

Despite his contentions to the contrary, McAllister has not established that the district court made clearly erroneous factual findings or relied on evidence outside the record. A factual finding is clearly erroneous "'when, although there may be some evidence to support the finding, the

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003) (quoting *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997)). "As long as the district court has interpreted the evidence in a manner consistent with the record, 'the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985)).

McAllister also has not established that the district court's discussion of Congress's judgment was a clearly erroneous factual finding. Moreover, McAllister has not explained why his mere disagreement with Congress's judgment should leave us with the definite and firm conviction that a mistake has been committed.

Despite McAllister's contentions to the contrary, he has not established that the district court made a factual finding that McAllister caused specific social harms. The record shows that the district court discussed social harms caused by methamphetamine offenders, like McAllister, in the context of its explanation of Congress's judgment that methamphetamine offenders should be incarcerated. To read the district court's explanation as a factual finding that McAllister caused specific social harms would ignore the context of the court's discussion.

c.

McAllister has not established that the district court treated the Guidelines as presumptively reasonable. In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines are "effectively advisory." *Id.* at 245. Still, "district courts must treat the Guidelines as the 'starting point and the initial benchmark.'" *Kimbrough*, 552 U.S. at 108 (quoting *Gall*, 552 U.S. at 49.

Here, the record shows that the district court recognized that the Guidelines were "merely advisory and they are not binding on the Court." R. 629 at 11. The district court explained that it "is required to consult the [G]uidelines . . . as well as the sentencing factors stated in 18 U.S.C. Section 3553(a)." *Id.* The record also shows that, at McAllister's request, the district court exercised its independent discretion and declined to follow the Guidelines' recommendation against considering a defendant's personal characteristics. In doing so, the district court was not treating the Guidelines as presumptively reasonable.

2.

McAllister contends that his sentence is substantively unreasonable because the district court failed to consider and weigh each of the sentencing goals identified in 18 U.S.C. § 3553(a). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, . . . fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). "The

sentencing judge may not presume that the guidelines range is reasonable, but must consider all of the relevant § 3553(a) factors and impose a sentence that is 'sufficient but not greater than necessary' to comply with the purposes of § 3553(a)(2)." *Id.* (citing *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)). "A properly calculated within-guidelines sentence will be afforded a rebuttable presumption of reasonableness on appeal." *Id.* (citing *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006)).

McAllister has not demonstrated that his sentence was substantively unreasonable. McAllister does not point to any portion of the record that shows the district court arbitrarily selected his sentence, failed to consider relevant § 3553(a) factors, or improperly weighed such factors. Indeed, the record shows that the district court addressed the relevant § 3553(a) factors, grouping them into four categories: retribution; general deterrence; specific deterrence; and rehabilitation. The district court explained that, because McAllister was in criminal history category I, specific deterrence and rehabilitation were not a "high priority" in his case. R. 629 at 116-17. McAllister has not pointed to any portion of the record nor cited binding authority suggesting that the district court's treatment of these factors was inappropriate.

Other than disagreeing with the district court's analysis, McAllister has not provided any reason to conclude that the district court abused its discretion. McAllister's dissatisfaction with the sentencing court's decision is not a proper grounds for reversing his sentence. *See United States v. Jackson*, 466 F.3d 537, 540 (6th Cir. 2006) ("It appears that Jackson is simply unhappy with his sentence [of 72 months in prison], despite the fact that it is lower than the statutory maximum (120

months) and the applicable Guidelines range (84-105 months).").  In sum, McAllister has not established that the district court erred.

### B.

### Charles Patterson and Stacey Ratcliff

Patterson and Ratcliff contend that the district court erred by applying the Section 2D1.1(b)(1) dangerous weapon enhancement because there was insufficient evidence connecting the firearm found in their bedroom with their drug trafficking offense.  We review a district court's interpretation of the Sentencing Guidelines *de novo* and its "findings of fact at sentencing for clear error."  *Baker*, 559 F.3d at 448.

Pursuant to Section 2D1.1(b)(1), a two-level enhancement should be added to a defendant's base offense level "[i]f a dangerous weapon (including a firearm) was possessed."  U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) [hereinafter Sentencing Guidelines].  "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  *Id.* § 2D1.1 cmt. n.3(A).

Under Section 2D1.1(b)(1), the government has the burden of showing "by a preponderance of the evidence that '(1) the defendant actually or constructively "possessed" the weapon, and (2) such possession was during the commission of the offense.'"  *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007) (quoting *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996)).  This

Court has previously recognized that the 1991 amendments to the Sentencing Guidelines removed the requirement that the weapon be possessed *during the commission of the crime*. *United States v. Faison*, 339 F.3d 518, 520 (6th Cir. 2003). "[A]ll that the government need show is that the dangerous weapon [was] possessed during 'relevant conduct.'" *Id.*

This Court has also recognized that although the Government's burden contains "two separate inquiries, in most instances they collapse into a single factual determination because the weapon was present when the arrest took place or where the crime was committed." *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir. 1991), *abrogated on other grounds by United States v. Jackson-Randolph*, 282 F.3d 369 (6th Cir. 2002). In such "instances, once the government proves a defendant was in possession of a weapon, its burden is satisfied." *Id.*

Once the Government meets its burden, "a [rebuttable] presumption arises that 'the weapon was connected to the offense.'" *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (quoting *United States v. Hough*, 276 F.3d 884, 894 (6th Cir. 2002)). The burden then "shifts to the defendant to show that it was 'clearly improbable' that the weapon was connected to the offense." *Catalan*, 499 F.3d at 606. A defendant must present evidence, not mere argument, in order to meet his or her burden. *See Hough*, 276 F.3d at 894 ("[S]peculation is not evidence and does not establish that it was 'clearly improbable' that [Woods] possessed the firearms during the offense."); *see also Wheaton*, 517 F.3d at 368 ("The bare assertion of Wheaton's counsel that the gun might simply have been for the lawful purpose of defending the residence is insufficient to sustain Wheaton's burden of showing it was 'clearly improbable' that the gun was related to the drug conspiracy."); *Darwich*,

337 F.3d at 665 ("Darwich argues that the connection of the weapons to the drugs was tenuous, but fails to show that the presumed connection was 'clearly improbable.' Thus, the district court did not clearly err in applying the two-level firearm enhancement.").

This Court considers several factors, none of which is alone controlling, when determining whether the application of a Section 2D1.1(b)(1) enhancement was appropriate:

> (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession.

*United States v. Edmonds*, 9 F. App'x 330, 332 (6th Cir. 2001) (citing *United States v. Calhoun*, 49 F.3d 231, 237 (6th Cir. 1995); *United States v. Chalkias*, 971 F.2d 1206, 1217 (6th Cir. 1992); *United States v. McGhee*, 882 F.2d 1095, 1099 (6th Cir. 1989)).

Here, the district court did not err in concluding that the Government presented sufficient evidence to meet its burden. The search of Patterson and Ratcliff's home uncovered a loaded shotgun in relatively close proximity to drug paraphernalia during the period of the drug conspiracy. This evidence, combined with the fact that Patterson and Ratcliff pleaded guilty to drug trafficking, could reasonably lead to the conclusion that Patterson and Ratcliff engaged in drug trafficking activities at their home and the shotgun was present during such activities.

As for the connection between the weapon and the offense, the evidence showed that (1) officers found a shotgun in Patterson and Ratcliff's home;[2] (2) the shotgun was relatively accessible because it took only moments to retrieve; (3) the shotgun was loaded; (4) the shotgun was in relatively close proximity to drug paraphernalia, including plastic bags wrapped in black electrical tape, digital scales, and a cannister with a false bottom that contained a plastic bag with methamphetamine residue; (5) Patterson and Ratcliff did not present evidence that the shotgun had a legitimate purpose; and (6) Patterson and Ratcliff admitted, in their plea agreements, that they were involved in methamphetamine trafficking.

Contrary to Patterson's contentions, dangerous weapons and drugs (or drug paraphernalia) need not be in the same location for the Section 2D1.1(b)(1) enhancement to apply. *See Wheaton*, 517 F.3d at 368 (affirming application of Section 2D1.1(b)(1) enhancement even though no drugs were found in the house where officers found a gun); *United States v. Bell*, 346 F. App'x 46, 47-48 (6th Cir. 2009) (affirming application of Section 2D1.1(b)(1) enhancement even though firearms were found in upstairs bedroom and cocaine, scale, and cash were found in basement safe).

Patterson's argument that the shotgun had a legitimate purpose is not persuasive. On appeal, Patterson suggests that the shotgun could have been used for hunting because it was found in his home, which is on "prime hunting land," and was discovered during deer hunting season. Patterson,

---

[2]A shotgun is a firearm associated with drug trafficking. *See, e.g.*, *United States v. Kimbrough*, 376 F. App'x 592, 597 (6th Cir. 2010) ("Kimbrough's loaded shotgun is 'of a type associated with drug trafficking.'" (quoting *Calhoun*, 49 F.3d at 237)).

however, has not supported his argument with citation to evidence in the record. Indeed, Patterson cannot do so because he did not present any evidence at the sentencing hearing. Patterson's argument, alone, is insufficient to satisfy his burden.

As the district court noted, although Ratcliff's counsel's cross-examination of Detective Smith revealed weaknesses in his testimony, neither Ratcliff nor Patterson presented any evidence showing that it was clearly improbable that the shotgun was connected to their drug offense and, thus, they failed to meet their burden. If a defendant fails to meet his or her burden of showing that it was clearly improbable that a firearm was connected to his or her drug offense, "the district court should apply the enhancement." *Catalan*, 499 F.3d at 606-07. Because Patterson and Ratcliff did not meet their burden of showing that it was clearly improbable that the shotgun was connected to their offense, the district court did not err when it applied the Section 2D1.1(b)(1) dangerous weapon enhancement to their sentences.

C.

Stanley Hughes

On appeal, Hughes contends that the district court erred because his sentence is procedurally and substantively unreasonable. This Court "review[s] a district court's sentencing decision[] 'under a deferential abuse-of-discretion standard'" for procedural and substantive reasonableness. *Baker*, 559 F.3d at 448 (quoting *Gall*, 552 U.S. at 41). We review a district court's interpretation of the Sentencing Guidelines *de novo* and its "findings of fact at sentencing for clear error." *Id.* Hughes

contends that his sentence is procedurally unreasonable because the district court failed to explain adequately its rejection of his sentencing disparity argument. We agree.

1.

As an initial matter, we conclude that Hughes's procedural reasonableness challenge is subject to plain error review because his counsel did not raise it in response to the district court's *Bostic* question. In *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), this Court held that district courts are required, "after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." *Id.* at 872. "If a party does not clearly articulate any objection and the grounds upon which the objection is based, when given this final opportunity to speak, then that party will have forfeited its opportunity to make any objections not previously raised and thus will face plain error review on appeal." *Id.* at 872-73.

In *United States v. Simmons*, 587 F.3d 348 (6th Cir. 2009) [hereinafter *Simmons II*], this Court held that a defendant's procedural reasonableness challenge to his sentence was subject to plain error review because his counsel's response to the *Bostic* question was too general to preserve his procedural objection. *Id.* at 357-58. In *Simmons II*, the defendant argued at sentencing that a within-Guidelines sentence was improper due to the sentencing disparities for crack and powder cocaine offenses. *Id.* at 353. The district court rejected the defendant's argument, imposed a

within-Guidelines sentence, and asked the *Bostic* question. *Id.* The defendant's counsel responded, "Your Honor, I object just for the record for the procedural, substantive aspects." *Id.* at 353, 355.

On appeal, the defendant argued that the district court's sentence was procedurally unreasonable because the court failed to explain its rejection of his substantive argument regarding crack and power cocaine sentencing disparities. *Id.* at 354-55. This Court held that:

> *Vonner* requires the application of plain-error review to procedural claims like this one, where a party answers the *Bostic* question in the affirmative, but at such a high degree of generality that the district court has no opportunity to correct its purported error and the court of appeals has been deprived of a more detailed record to review.

*Id.* at 358.

Here, Hughes's counsel's response to the district court's *Bostic* question, like defense counsel's response in *Simmons*, was too general to preserve his procedural objection. After the district court announced Hughes's sentence, it asked defense counsel whether Hughes had any objections to the sentence that he had not previously raised. In response, Hughes's counsel simply stated "[w]e would just reserve objections to the sentence." R. 629 at 139. This objection did not raise the specific procedural objection that Hughes now raises on appeal; i.e., that the district court failed to explain adequately its rejection of his sentencing disparity argument. By failing to do so, Hughes deprived the district court of the opportunity to correct the alleged error and deprived this Court of a more detailed record to review. Thus, we review for plain error.

2.

In order to establish plain error, a defendant must show: "(1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Baker*, 559 F.3d at 454 (quoting *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998)).

In order to determine if an error occurred in the district court in this case, we must address the district court's obligation to explain the basis for its sentencing decision. In *United States v. Wallace*, 597 F.3d 794 (6th Cir. 2010), this Circuit held, on plain error review, that a defendant's sentence was procedurally unreasonable because the record failed to show that the district court considered the defendant's argument regarding disparities between her sentence and that of her co-conspirators. *Id.* at 803-08. In doing so, this Circuit explained that "'[w]hen a defendant raises a particular[, nonfrivolous] argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it.'" *Wallace*, 597 F.3d at 803 (quoting *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009)).

In rendering its decision, the district court stated:

> Mr. Hughes had asked the Court to impose a nonguidelines sentence in this case. The Court has considered his request, and the Court will deny that request. The Court has taken into consideration the defendant's background, his history, and his

characteristics, as the Court is required to do under Section 3553, and the Court concludes, primarily because of his criminal record, that a sentence outside the guidelines would not fulfill the factors in Section 3553.

R. 629 at 132. The district judge "did not make even a cursory mention of the disparity in sentences between" Hughes and his co-conspirators. *Wallace*, 597 F.3d at 803. As this Court explained in *Wallace*, "[t]he district judge's failure to even so much as acknowledge the argument constitutes an error that was obvious or clear, the first two prongs of plain error review." *Id.* at 806. This error also affected Hughes's "substantial right" to meaningful appellate review and the "fairness, integrity, or public reputation of proceedings." *Wallace*, 597 F.3d at 807-08. We are persuaded that we must vacate Hughes's sentence because the district court failed to set forth its reasons for rejecting his non-frivolous argument that his sentence regarding the disparity between his sentence and that pronounced against his more culpable co-conspirators. Because of this procedural error, we cannot determine at this time whether the district court's sentence was substantively reasonable. *United States v. Garcia-Robles*, 562 F.3d 763, 768 (6th Cir. 2009).

D.

Jessica Weeks-Savage

Weeks-Savage contends that the district court erred by overruling her objection to the addition of two criminal history points based on her sentence of sixty-days for violating a condition of probation on a 2004 obstruction conviction because she was not represented by counsel at the probation revocation hearing. As we previously stated, we review a district court's interpretation

of the Sentencing Guidelines *de novo* and its "findings of fact at sentencing for clear error." *Baker*, 559 F.3d at 448.

Pursuant to Section 4A1.2(d)(2)(A), a trial court should add two criminal history points "for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense." Sentencing Guidelines § 4A1.2(d)(2)(A).

Weeks-Savage does not dispute that her sixty-day sentence for violating a condition of probation on the 2004 state obstruction conviction falls within the scope of Section 4A1.2(d)(2)(A). The record shows that she served a sixty-day sentence of confinement and was released in 2004, which was within five years of her involvement in the current offense in 2008. Rather, Weeks-Savage contends that she was denied due process because she was not represented by counsel at the probation revocation hearing on the 2004 obstruction conviction nor was she advised that she could have requested counsel at that hearing.

"[A] defendant in a sentencing proceeding may not collaterally challenge the use of prior convictions or parole revocations for purposes of criminal history calculation unless the challenge is based upon an alleged violation of the right to counsel." *United States v. Lalonde*, 509 F.3d 750, 767 (6th Cir. 2007). A defendant does not have a Sixth Amendment right to counsel at a probation revocation hearing. *See Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973) (distinguishing *Mempa v. Rhay*, 389 U.S. 128 (1967), by stating that its reasoning "does not require a hearing or counsel at the

time of probation revocation in a case such as the present one, where the probationer was sentenced at the time of trial").

Weeks-Savage does not argue that she had a Sixth Amendment right to counsel at the probation revocation hearing on her 2004 state obstruction conviction. Rather, Weeks-Savage alleges that she had a due process right to counsel at the probation revocation hearing. Because Weeks-Savage does not attack her sixty-day sentence for violating a condition of probation on the 2004 state obstruction conviction based on the Sixth Amendment right to counsel, she cannot collaterally attack the validity of that sentence in these proceedings. *See Custis v. United States*, 511 U.S. 485, 496 (1994) (permitting collateral attacks only for *Gideon* violations under the Sixth Amendment).

Since Weeks-Savage cannot collaterally attack her sixty-day sentence for violating a condition of probation on the 2004 state obstruction conviction, we need not reach the merits of her arguments on appeal and conclude that the district court did not err in adding two criminal history points for that sentence.

III.

For the foregoing reasons, we affirm as to McAllister, Patterson, Ratcliff, and Weeks-Savage. We vacate Hughes's sentence and remand for resentencing.

**JULIA SMITH GIBBONS, Circuit Judge, concurring.** I concur in the majority opinion in its entirety but write separately to emphasize one point with respect to the appeal of Stanley Hughes. Often cryptic references in a record have meaning to the district court participants that is not apparent to us. Here, counsel for Hughes likely knew how Hughes's criminal record compared with that of his co-defendants. The district court certainly was aware of the comparison. The reference to Hughes's criminal record by both counsel and the district court may well have carried an unstated implication that Hughes's criminal record compared unfavorably to that of other defendants who were more culpable in this conspiracy. But we cannot infer that implication when it is not made explicit. My instincts tell me that the very experienced, thorough district judge in this case performed exactly the analysis we require on remand and that those present likely knew his reasoning. But of course instincts cannot provide the basis for decision.