The allegation of bias in this case arises out of two statements raised during a one-day resentencing hearing near the end of a long three-month cycle of resentencing hearings. This does not rise to the level of reversible error.

### III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0018P (6th Cir.)
File Name:  02a0018p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

   *v.*

RICHARD HOUGH (00-3380);
LAMONT NEEDUM (00-3381);
ANTHONY GIBBS (00-3417);
CHAD GIBBS (00-3434);
ANTWAN WOODS (00-3592),
   *Defendants-Appellants.*

Nos. 00-3380/
3381/3417/3434/
3592

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No.  95-00044—George C. Smith, District Judge.

Argued and Submitted:  December 7, 2001

Decided and Filed:  January 16, 2002

Before:  MOORE and COLE, Circuit Judges; O'MEARA,
District Judge.[*]

_____

[*]The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:** Spiros P. Cocoves, Toledo, Ohio, Joseph D. Reed, Columbus, Ohio, Andrew P. Avellano, Columbus, Ohio, Kevin M. Schad, SCHAD & COOK, Indian Springs, Ohio, Dennis C. Belli, Columbus, Ohio, for Appellants. Terry Lehmann, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Spiros P. Cocoves, Toledo, Ohio, Joseph D. Reed, Columbus, Ohio, Andrew P. Avellano, Columbus, Ohio, Kevin M. Schad, SCHAD & COOK, Indian Springs, Ohio, Dennis C. Belli, Columbus, Ohio, for Appellants. Terry Lehmann, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, Salvador A. Dominguez, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

---

**OPINION**

---

R. GUY COLE, JR., Circuit Judge. This case requires us to review for a second time the sentences of alleged members of the "Short North Posse" ("SNP"), a loose affiliation of cocaine base ("crack") dealers who conspired to protect their trade in the Short North neighborhood of Columbus, Ohio during the first half of the 1990s. This court vacated the sentences of the five Defendants in *United States v. Gibbs*, 182 F.3d 408 (6th Cir. 1999), and instructed the district court to hold resentencing hearings for Defendants. Defendants were resentenced in 2000 and now appeal. They allege, among other issues, that the district court erred in its calculation of drug quantities, impermissibly applied the weapon enhancement under § 2D1.1 of the U.S. SENTENCING GUIDELINES MANUAL (1998), erred in calculating criminal history and other offense levels under the Guidelines, and exhibited bias during the resentencing hearing.

The Court does not appreciate the tone of the defendant's memorandum regarding the probation officer and considers this an undeserved personal attack upon court personnel. The probation officer assigned to this case always has performed his job with integrity and has a long record of unbiased fact finding. If the defendant or his counsel have differences of opinion regarding the legal or factual conclusions contained in the defendant's Presentence Report, they are encouraged to raise those issues through objections presented to the Court. However, when a defendant's sentencing objections personally attack a probation officer and call into question his motives, the defendant and his counsel have gone too far. The probation officer should not be ridiculed for performing his job in a thorough and insightful manner.

. . . .

Once again the Court must note its concern regarding the personal nature of the defendant and his counsel's attack on the probation officer's conduct in this case. In the future, the defendant and his counsel will be well-served to present their objections in a more professional manner.

A.J.A. at 497-98, 500.

No reasonable person would take these statements as anything other than an expression of mild irritation with defense counsel for impugning the motives of the probation officer who produced the presentence report. As this court stated in *United States v. Morrow*, 977 F.2d 222 (6th Cir. 1992) (en banc), "Much of the concern about an otherwise inappropriate judicial act or remark is neutralized by the absence of the jury. The threat of prejudice is greatest when a judge overpowers a jury, or when she unduly interferes with counsel's conduct of the case." *Id.* at 225 (citing *United States v. Slone,* 833 F.2d 595, 598 (6th Cir.1987), and *United States v. Hickman,* 592 F.2d 931, 933 (6th Cir.1979)).

### G.  Hough's Motion for a New Trial

Hough argues that the district court should have granted him a new trial.  We review denial of a motion for a new trial under the abuse of discretion standard.  *United States v. Pierce*, 62 F.3d 818, 824 (6th Cir. 1995).

Hough argues that this court's vacatur of the conspiracy count in *Gibbs* qualifies as "new evidence" requiring a new trial.  This argument cannot be seriously entertained.  It is patently absurd to regard disposition on direct appeal as "new evidence" that would justify a new trial.[9]  In the absence of new evidence, Defendant had seven days from verdict to file a motion for a new trial.  He failed to do so.  Failure to do so deprives the district court of jurisdiction to even consider the motion.  *United States v. Koeheler*, 24 F.3d 867, 869 (6th Cir. 1994).

Therefore, we hold that the district court did not err by denying Hough's request for a new trial.

### H.  Judicial Bias

If an objection to a trial judge's impartiality is preserved, we review to see whether "a reasonable, objective person, knowing all of the circumstances, would not have questioned [the judge's] impartiality."  *United States v. Sturman*, 951 F.2d 1466, 1482 (6th Cir. 1991).

Even assuming Defendants properly preserved their objection, there is no evidence that Judge Smith communicated anything that would satisfy the *Sturman* standard.  The full text of the language to which Defendants object  reads as follows:

---

[9]This is not a case where a state court conviction has been reversed on appeal and is introduced as evidence in a federal prosecution.  *Cf. United States v. Perno*, 605 F.2d 432 (9th Cir. 1979).

Because we find no merit to any of these arguments, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

The shooting of a friend during a drug deal spurred Robert Dotson and his friends to form the SNP in the Short North area of Columbus in 1990.  Over the next five years, the SNP grew into a loose confederation of crack dealers, users, and others who aspired to prevent anyone outside the Short North from selling crack in the neighborhood without permission.  Defendants-Appellants Richard Hough, Lamont Needum, Anthony Gibbs, Chad Gibbs, and Antwan Woods were all alleged members of the SNP.

In March 1995, following a massive local and federal drug enforcement operation, Defendants were named, along with thirty-six other individuals, in a 185-count indictment.  The indictment alleged, among other crimes, that they conspired to distribute crack and that they used firearms in relation to their drug trafficking activity.  In November 1995, a jury sitting in the United States District Court for the Southern District of Ohio found Defendants guilty, and Defendants appealed to this court.

In *United States v. Gibbs*, 182 F.3d 408 (6th Cir. 1999), this court reversed the conspiracy convictions of Hough, Needum, Anthony Gibbs and Chad Gibbs, but affirmed the conviction of Woods; reversed the firearm convictions of Needum and Woods, but affirmed the convictions of Hough and Anthony Gibbs; and affirmed the possession and distribution charges against all Defendants.  Finally, this court vacated Defendants' sentences and remanded the case to the district court for *de novo* resentencing.  *Id.* at 447.

Judge George C. Smith, who presided over the original trial and sentencing, resentenced Defendants during the spring and summer of 2000.  Defendants now appeal their new sentences and assign eight points of error:

First, that their sentences violate the Fifth and Sixth Amendment as interpreted in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the relevant amounts of drugs attributed to them were not found by a jury beyond a reasonable doubt.

Second, that the evidence that the district court used to calculate the drug quantities attributed to them did not have sufficient indicia of reliability.

Third, that the district court erred in enhancing the sentence of Chad Gibbs and Woods for possession of a firearm.

Fourth, that the district court erred by denying Chad Gibbs a decrease for acceptance of responsibility.

Fifth, that the district court erred in its calculation of Woods's criminal history points.

Sixth, that the district court erred by impermissibly including Anthony Gibbs's juvenile conduct in its sentence calculation.

Seventh, that the district court erred in denying Hough's motion for a new trial.[1]

Eighth, that the district court judge erred by failing to recuse himself due to his bias against Defendants and counsel, and that such bias denied Defendants due process of law.

Defendants all filed timely notices of appeal; this court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 1291.

---

[1] Hough has stated that his "sole argument" is that the district court erred in not granting him a new trial. Hough's Brief at 7. That being the case, we consider all his other arguments to have been abandoned; reference to "Defendants" herein does not include Hough.

We agree with the Second Circuit, and find that the principle applies to quasi-criminal juvenile conduct such as the conduct in this case. Even if the district court lacked jurisdiction to prosecute Anthony Gibbs for his juvenile conduct as a separate crime, it did not lack jurisdiction to consider his juvenile behavior in calculating his sentence under § 1B1.3(a)(2) for a crime he committed as an adult.

We explicitly stated in our remand:

Although we vacate Gibbs's conspiracy conviction, we hold that the district court on remand may take into account quantities of crack cocaine Gibbs sold before he reached age eighteen as relevant conduct to Gibbs's independent drug trafficking convictions.

. . . .

As long as the government successfully prosecutes a defendant for a crime that occurred after the defendant reached the age of majority, the district court may consider relevant conduct that occurred before the defendant reached the requisite age as long as such conduct falls within the limitations set forth in § 1B1.3(a)(2).

*Gibbs*, 182 F.3d at 442.

The Sentencing Guidelines allows the grouping of counts that are part of the same course of conduct. The district court had jurisdiction to hear the adult crimes of Anthony Gibbs, and is authorized by the Guidelines and by the remand to take into account the pre-1994 behavior of Defendant. The record is replete with testimony that Anthony Gibbs sold crack and carried weapons nearly continuously from 1991 to 1995.

We therefore hold that the district court did not err in considering Anthony Gibbs's juvenile conduct.

States." 18 U.S.C. § 5032. If the Attorney General fails to certify to the offense, the juvenile must be surrendered to state authorities. *Id.*

Gibbs is quite right that the FJDA and the *Chambers* decision divest the court of subject matter jurisdiction over uncertified behavior committed by juveniles. However, as the district court noted, Anthony Gibbs was prosecuted as an adult for his adult behavior, and the district court had subject matter jurisdiction to hear any conduct that may be relevant to sentence Gibbs appropriately for that behavior.

Section 1B1.3(a)(2) of the Sentencing Guidelines allows the court to consider all acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction." The court is given wide discretion in what it may consider as relevant in implementing § 1B1.3. As Congress has stated, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. *See also United States v. Watts*, 519 U.S. 148, 150 (1997) (holding that a court may consider any conduct, even that which does not result in a conviction, in determining a sentence under § 1B1.3). Furthermore, as the Second Circuit has held, "the relevant criminal conduct need not be conduct with which the defendant was charged, nor conduct over which the federal court has jurisdiction." *United States v. Dickler*, 64 F.3d 818, 831 (2d Cir. 1995) (citation omitted). This principle has been broadened by later decisions in that circuit. In *United States v. Martin*, 157 F.3d 46 (2d Cir. 1998) the court held that "a federal district court may consider any relevant conduct when sentencing a defendant, whether or not the conduct is a federal crime. In the context of U.S.S.G. § 1B1.3(a), jurisdictional considerations are not relevant to a defendant's criminal responsibility." *Id.* at 51.

## II. DISCUSSION

### A. *Apprendi*

For the first time in this case, Defendants frame their objection to the calculation of drug quantities as a constitutional violation. They allege that their Fifth Amendment due process and Sixth Amendment notice and jury rights were violated because the precise drug amounts attributed to them were not proved to a jury beyond a reasonable doubt. In support of this claim, Defendants cite to the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Because the government proved beyond a reasonable doubt that each Defendant possessed the amount of drugs specified by his indictment, and because the district court did not exceed the maximum penalty, nor raise the minimum penalty prescribed in the statute, we find no *Apprendi* error in this case.

The last of Defendants was sentenced on May 1, 2000, nearly two months before *Apprendi* was decided on June 26, 2000. Nevertheless, this case is before us on direct appeal and Defendants are entitled to retroactive consideration of their claim. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (holding "that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final"). Defendants' repeated objection to the method of calculating drug amounts is sufficient to preserve their *Apprendi* challenge on appeal. *See United States v. Strayhorn*, 250 F.3d 462, 467 (6th Cir. 2001). We therefore review this *Apprendi* challenge *de novo*. *Id.*

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

*Apprendi*, 530 U.S. at 490. Drug amounts are one such fact.[2] This does not mean, however, that the precise amount of drugs must always be submitted to the jury. As the *Apprendi* doctrine has developed in our circuit, the amount of drugs must be submitted to a jury and proved beyond a reasonable doubt when a drug amount calculation either threatens a penalty that would pierce the ceiling authorized by the statute, *see United States v. Rebmann*, 226 F.3d 521, 524 (6th Cir. 2000), or threatens a penalty that would raise the floor authorized by the statute, *see United States v. Ramirez*, 242 F.3d 348, 351 (6th Cir. 2001).

In this case, the district court sentences were safely lodged between the minimum required by the indictment and conviction, and the maximum allowed by the statute. A jury found beyond a reasonable doubt that every Defendant had possessed the minimum amount of drugs specified in the indictment, and in no case did the district court sentence a Defendant to a penalty greater than the maximum permitted by the conviction, or to a greater range of penalties than that permitted by the conviction. Needum was convicted on two counts of possession of five grams of crack under 21 U.S.C. § 841(b)(1)(B)(iii); *see also, e.g.,* A.J.A. at 185, 206, 248 (specifying amounts in counts 47 and 102). Under the statute, he faced a prison term of 60 to 480 months. 21 U.S.C. § 841(b)(1)(B)(iii). The district court found that Needum possessed 834.2 grams, A.J.A. at 448, and sentenced him to a total of 327 months, clearly under the 480 month maximum he faced.

---

[2]Defendants also argue that the jury did not pass on whether the drugs were crack or some other substance. This argument is meritless. Defendants were all indicted and convicted of possessing or selling "cocaine base, commonly referred to as crack, " *see e.g.*, Amended Joint Appendix ("A.J.A.") at 185, 209, 212, 221. The record is suffused with terms for crack, and lay testimony at trial is sufficient to establish that a drug is crack cocaine. *See United States v. Owusu*, 199 F.3d 329, 340 (6th Cir. 2000).

Anthony Gibbs now argues that because count 55 was dismissed, the district court was divested of subject matter jurisdiction to consider this activity in sentencing because it occurred prior to his eighteenth birthday.[7] He argues that the Federal Juvenile Delinquency Act ("FJDA") precludes the exercise of subject matter jurisdiction over juvenile behavior that is not certified over to the district court by the Attorney General. *See* 18 U.S.C. §§ 5031-32. In support of this interpretation of the FJDA, Defendant cites our decision in *United States v. Chambers*, 944 F.2d 1253 (6th Cir. 1991), in which we stated that "If juveniles generally commit no 'crimes' when performing [acts that would have been crimes had they been an adult], the district court and government cannot rely upon the criminal statutes as a basis for the court's assumption of jurisdiction over the prosecution of juveniles." *Id.* at 1258.

The argument is creative, but not particularly compelling.

The FJDA prohibits the federal courts from exercising jurisdiction over a juvenile alleged to have committed an act of juvenile delinquency[8] (subject to special exceptions) unless the Attorney General certifies the offense (subject to certain requirements) "to the appropriate district court of the United

---

[7]Defendant correctly notes that because the court reversed the conspiracy count against him in *Gibbs,* the juvenile conduct cannot be counted under U.S.S.G. § 1B1.3(a)(1) as part of a conspiracy "ratified" by his adult behavior. *See Gibbs*, 182 F.3d at 423; *cf. United States v. Maddox, 944* F.2d 1223 (6th Cir. 1991) (holding that an adult can submit to federal jurisdiction by "ratifying" a conspiracy that defendant engaged in while a juvenile).

[8]"Juvenile delinquency" is defined as "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." 18 U.S.C. § 5031. A "juvenile" is "a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday." *Id.*

collaterally attack their state convictions at sentencing hearings, except for convictions obtained without the right to counsel. *See also United States v. Pluta*, 144 F.3d 968 (6th Cir. 1998). Woods makes no argument that he pleaded guilty without counsel, so we reject this argument.

We also reject Woods's third argument. We have held in *United States v. Brannon*, 7 F.3d 516, 521 (6th Cir. 1993), that 21 U.S.C. § 851 only applies to statutory sentence enhancements. Because this is an enhancement under the Guidelines, § 851 does not apply.

We therefore hold that the criminal history calculation for Woods was not in error.

### F.  Anthony Gibbs's Juvenile Conduct

We review the legal application of the Guidelines *de novo*. *United States v. Gilbert*, 173 F.3d 974 (6th Cir. 1999).

In this court's remand, we held that the district court could use drugs attributable to Anthony Gibbs before February 15, 1994, when he was still a juvenile, to calculate his sentence. This court held that because count 55 for possession with intent to sell "appear[ed] to be valid," the district court could consider the drug amounts.[6]   *Gibbs*, 182 F.3d at 442. However, prior to resentencing, the government voluntarily dropped count 55. Appellee's Brief at 49. Nevertheless, Judge Smith included Defendant's drug activities, including those constituting count 55, as relevant conduct for purposes of calculating his base level under U.S.S.G. § 1B1.3(a)(2). A.J.A. 1431-g.

---

[6]Count 55 specifically alleged that "[d]uring the month of July, 1993 . . . Anthony Gibbs did knowingly and intentionally unlawfully possess with the intent to distribute more than 5 grams of cocaine base." A.J.A. at 188.

The penalties for the rest of Defendants are equally sound. Chad Gibbs and Woods both faced the same minimum and maximum penalties as Needum, were convicted of possessing at least five grams of cocaine base under § 841 (b)(1)(B)(iii), and were sentenced to 235 and 396 months respectively. Anthony Gibbs was convicted of distributing cocaine base (of any detectible amount) under § 841(b)(1)(C) and sentenced to188 months, well below the 240 month maximum permitted by the statute.

The district court did not err.

### B.  Calculation of Drug Quantities

Defendants allege that the district court did not have sufficient evidence to support the drug amounts attributed to them. Specifically, Defendants reiterate this court's concern in *Gibbs* with whether certain witness testimony contained sufficient indicia of reliability to satisfy the preponderance of evidence requirement.[3]   *Cf. Gibbs*, 182 F.3d at 440. However, only Needum and Woods have specified precisely where witness testimony on resentencing was suspect. The other Defendants attempt to either incorporate their co-defendants' arguments by reference under Rule 28(i) of the Federal Rules of Appellate Procedure, or aver to calculation errors in broad, summary fashion. Neither of these strategies

---

[3]Defendants also argue that the district court exceeded the scope of the mandate in *Gibbs* by using witness testimony, not specifically identified in *Gibbs*. This argument is unpersuasive. Granted, we did give explanations in *Gibbs* of where we found the district court's use of certain witness testimony troubling. However, as we stated in *United States v. Campbell*, 168 F.3d 263, 267 (6th Cir. 1999), "[n]ot all reasoned explanations . . . qualify as limited remands . . . . A limited remand must convey clearly the intent to limit the scope of the district court's review. . . . The language used to limit the remand should be, in effect, unmistakable." *Id.*  at 267-68. We clearly stated in *Gibbs* that the resentencing hearing should be conducted *de novo*. *Gibbs*, 182 F.3d at 447. The district court was permitted to consider other offers of proof on remand. *See United States v. Welch*, 97 F.3d 142, 153 (6th Cir. 1996).

will suffice to preserve the issue on appeal. The calculation of drug quantities is an individual, fact-specific exercise that requires individual, fact-specific briefing. Because Needum and Woods's co-defendants have failed to adequately brief this court, we consider the co-defendants' claims to have been abandoned. *See Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 154 (6th Cir. 1996) (holding that arguments not fully briefed are deemed abandoned); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (holding that "when one appellant raises fact-specific issues, a motion to adopt that appellant's argument, without more, is insufficient to raise that point of error as to the adopting co-appellant"); *accord United States v. Harris*, 932 F.2d 1529, 1533 (5th Cir. 1991).

We review the sentencing court's determination of drug quantity for clear error. *United States v. Jennings*, 83 F.3d 145, 149 (6th Cir. 1996). The quantity of drugs need only be supported by a preponderance of the evidence. *Id.* The district court may rely on any competent evidence in the record; however, the district court's findings must have "some minimum indicium of reliability beyond mere allegation." *United States v. Ward*, 68 F.3d 146, 149 (6th Cir. 1995) (citation omitted).

Needum was sentenced for possessing or distributing 834.2 grams of crack. On appeal, Needum challenges the accuracy of 826 grams attributed to him: 700 grams from the testimony of Quinton Clausell and 126 grams from the testimony of Tom Terry. He asserts that neither witness had "sufficient indicia of reliability" to justify the district court's finding by a preponderance of the evidence.

We find that Judge Smith did not err in his calculation. In *Gibbs*, we expressed particular concern with the unexamined hearsay testimony provided by witnesses, and relayed through the probation officer to the court. *Gibbs*, 182 F.3d at 444-45. On remand, Judge Smith confined himself only to that evidence available in the trial record. He estimated that Needum sold 700 grams of crack based on the trial testimony

Furthermore, Jeffrey Crockett testified that he sold crack cocaine to the defendant two or three times during the summer and winter of 1991. The defendant's drug trafficking in 1991 and his association with members of the Short North Posse raises the inference that the defendant had joined the conspiracy at that time.

Moreover, given the fact that the Short North Posse would not permit "outsiders" or non-members to sell in the Short North, the only way the defendant would have been permitted to sell crack in the Short North in 1991 is if he was a member of the conspiracy.

. . . .

The Court also notes that in his appeal to the Sixth Circuit in this case, the defendant argued that he could not be found to have joined the conspiracy until 1991. Therefore, he implicitly acknowledged that he was a member of the conspiracy in 1991.

A.J.A. at 515.

We agree with the reasoning of the district court. In sentencing we review the record for a preponderance of the evidence, not for evidence beyond a reasonable doubt. Woods bought and sold crack -- apparently without molestation -- in the "boundaries" staked out by the SNP in 1991. A.J.A. at 599-601, 1237-44. This fact, combined with testimony that Crockett "fronted"[5] Woods crack cocaine in 1991, A.J.A. at 1243, is sufficient to establish that Woods was a member of the conspiracy in 1991.

Defendant's second argument is also unavailing. The Supreme Court has held in *Custis v. United States,* 511 U.S. 485, 487 (1994), that defendants do not have the right to

---

[5]To "front" drugs means to offer drugs on credit, with the expectation of payment after they are sold. Such a relationship can be evidence of a conspiracy. *See United States v. Rodriguez*, 53 F.3d 1439, 1445 (7th Cir. 1995).

The denial was not clear error.

### E.  Woods's Criminal History Points

We review for clear error a district court's factual findings pertaining to a defendant's criminal history score. *United States v. McAdams*, 25 F.3d 370, 372 (6th Cir. 1994).

Section 4A1.1(e) of the Guidelines allows for an enhancement of two points for offenses committed less than two years after release from imprisonment on a sentence lasting at least sixty days.  Section 4A1.2(d)(2) allows for an enhancement of two points for each juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense.

Judge Smith found that Woods's three juvenile sentences in 1987, 1988, and 1989 were each committed within five years of his commencement of the conspiracy in 1991.  He therefore added six points for each count under § 4A1.2(d)(2). In addition, Judge Smith added an additional two criminal history points under § 4A1.1(e) because the two juvenile sentences in 1990 and 1991 occurred less than two years prior to the 1991 commencement date.

Woods argues that the court erred because (1) there was insufficient evidence to show that he commenced the instant offense, namely, the conspiracy, in 1991; (2) his juvenile sentences were imposed due to constitutionally infirm guilty pleas, and (3) the government failed to file an information before trial of Woods's prior convictions as required by 21 U.S.C. § 851(a).

We reject the first argument.  The district court found that

the defendant joined the conspiracy . . . at some time during 1991.  Robert Dotson testified at trial that he first observed the defendant selling crack cocaine on a consistent basis in the Short North area in 1991.

of Clausell.  Judge Smith noted "Mr. Clausell stated clearly that he saw the defendant selling crack on almost a daily basis throughout 1992 and that during this time, the defendant typically possessed a quarter ounce of crack per day." He did not note anything during cross-examination that would "significantly undermine [Clausell's] credibility." A.J.A. at 446.  Using a conservative estimate of possession or distribution of a quarter ounce of crack two times per week for the year of 1992, the district court arrived at the 700 gram figure.  A.J.A. at 446, 705.  Judge Smith also noted that Jeffery Crockett had seen Needum selling crack at that time. A.J.A. at 446.  George Miller partially corroborated this testimony at trial, stating that he saw Needum with $100 worth of crack on at least two or three occasions. A.J.A. at 956.

Needum also objects to the 126 grams attributed to him by Terry.  He argues that Judge Smith simply adopted this number without any further investigation into the reliability of the witness as required by *Gibbs*. *Cf. Gibbs*, 182 F.3d at 444. Judge Smith did rely solely on Terry's trial testimony in which Terry alleged to have sold Needum two ounces (56.7 grams) of crack on two separate occasions.  A.J.A. 1053-59, 1061.  However, unlike the amounts attributed to him in *Gibbs*, these calculations were based upon Terry's testimony at trial, subject to cross examination, and not by hearsay evidence relayed from Terry, to a probation officer, to the court.  Furthermore, Needum's drug activity is corroborated by the testimony of Crockett and Andrew Jackson.  A.J.A. at 772, 1260-61.

We find, therefore, that the district court had sufficient indicia of reliability to sentence Needum for possessing or distributing 834.2 grams of crack.

At resentencing, Woods was found to have possessed or distributed 1251.48 grams of crack.  Woods disputes 1211.68 grams of this amount.  Again, Judge Smith used testimony available from the trial transcript, and again Judge Smith

stated that his observation of witnesses on the stand provide their indicia of reliability. Woods, like Needum, alleges that the evidence is nevertheless unreliable. In particular, Woods objects to the use of the trial testimony of Robert Dotson, Clausell, George Gladden, Crockett, and Jeremiah Berger to establish the quantity of drugs. Having reviewed the record closely, we do not believe that the district court clearly erred in attributing this amount of drugs to Woods.

Dotson attributes 766.16 grams of crack to Woods. This amount is derived from the half an ounce (14.16 grams) Woods provided to Dotson in 1992, A.J.A. at 608, 609, 1486; nine ounces (252 grams) Dotson observed stashed in a sock in Woods's residence in 1993, A.J.A. at 677-78; and 500 grams that Woods processed at Dotson's residence on two separate occasions in the spring and fall of 1994. A.J.A. at 630-32, 1487. This court was suspicious of the testimony Dotson gave to the probation officer in *Gibbs*, especially considering Dotson's inability to recognize weight of drugs by sight. *Gibbs*, 182 F.3d at 444. These concerns linger on appeal. We believe that Dotson, as a seller and sometime user, could easily identify an ounce of crack cocaine, *see* A.J.A. at 632, and likely could recognize nine times that amount dumped out of a sock. But we are wary of Dotson's testimony that he could identify twenty or forty times that amount on sight. Indeed, Dotson testified that he did not know what a kilogram was. A.J.A. at 628. Nevertheless, we think that there is sufficient proof to support the full 500 gram estimate.

Clausell testified that he observed Woods cook about ten ounces of crack in a "pot" or "jar" on a third occasion in the winter of 1994. A.J.A. at 721-22. Woods showed Dotson a stash of at least nine ounces that he kept in a sock. Dotson testified that Woods cooked "a large amount" of cocaine in a "clear Visionware cook pot" in his apartment in the spring and then cooked another "large amount" in his apartment in the fall of 1994. A.J.A. at 630-32. Given that Woods cooked ten ounces on a separate occasion in a similar pot, and given

house. *See United States v. Hill*, 79 F.3d 1477, 1486 (6th Cir. 1996) (suggesting that the type of firearm can be probative in determining whether the firearm is connected to the offense). Gibbs had to show how it was "clearly improbable" that his readily retrievable handgun, which he possessed at all times during the drug transaction, was not connected to his drug trafficking offense. He has not done so. Therefore, we hold the enhancement was not in error.

### D. Acceptance of Responsibility

Chad Gibbs asserts that the district court erred by not crediting him for an acceptance of responsibility. "The determination of whether a defendant has accepted responsibility is a factual question for the district court which should be accorded great deference and should not be disturbed unless clearly erroneous." *United States v. Guthrie*, 144 F.3d 1006, 1011 (6th Cir. 1998).

The Guidelines permit a decrease for acceptance of responsibility under § 3E1.1. Gibbs argues that because he accepted responsibility for his actions in November 2000, he should be granted a decrease. He notes *United States v. Kraig*, 99 F.3d 1361 (6th Cir. 1996), in which this court affirmed the district court's grant of a decrease notwithstanding the fact that the defendant forced the government to go to trial. *Id.* at 1372. Gibbs is mistaken. The principle in *Kraig* is one of deference to the fact finder. *Id.* While going to trial does not preclude such a decrease, it certainly does not make denial of the decrease a reversible error. Nor does the record indicate reversible error. As Judge Smith noted, the § 3E1.1 adjustment is not intended to apply to a defendant who puts the government to the expense of proving its case, with the narrow exception of those who make a constitutional challenge. *See* U.S.S.G. § 3E1.1, cmt. n. 1 & 2. We agree. Chad Gibbs went to trial in 1995 on a theory of actual innocence, not on a constitutional claim. He only accepted responsibility of any sort in 2000.

The enhancement for Chad Gibbs presents a slightly closer case, but we nevertheless find that the evidence is sufficient to show that he possessed the firearm during his drug dealing.

Chad Gibbs sold crack cocaine to an undercover officer inside the kitchen of his house. The officer asked Chad Gibbs if he had a gun to sell; Gibbs went upstairs and, "a couple of moments later," returned with a .25 caliber chrome-plated pistol. A.J.A. at 1340. The district court found that the proximity in time and location of the sale of crack and the gun was sufficient to warrant the enhancement. The district court quoted this court in *Gibbs*, where we stated that "unlimited access to a particular area . . . is sometimes enough" to constitute possession. *Gibbs,* 182 F.3d at 424-25.

Quite aside from this constructive possession argument, we can readily infer that Chad Gibbs possessed the firearm. After all, it appears the gun was his to sell. The government having shown the pistol was possessed by Chad Gibbs during the drug transaction, the onus was on Chad Gibbs to show how it was "clearly improbable" that the gun was connected to the offense.

Gibbs argues that it is clearly improbable that the gun was connected to the offense because it was upstairs and because he sold it. The fact the gun was upstairs is not sufficient to rebut the presumption that it was connected to the offense; he could have retrieved it in moments had he so desired. As for his willingness to sell it, while it is possible that Chad Gibbs was merely a purveyor of guns as well as drugs in his Short North neighborhood, we believe that it is more likely that he instantaneously decided that the $50 purchase price for the gun was worth more than the protection it offered.

We are mindful of the policy behind the enhancement. The enhancement reflects the "increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1, cmt. n.3. This was not an antique blunderbuss in a curio shop, but a small, easily concealed pistol in the upstairs of a crack

that Dotson saw Woods's inventory of nine ounces, we conclude that the district court could reasonably estimate Dotson's testimony of "a large amount" as at least nine ounces (252 grams) on two occasions or over 500 grams. Therefore, we hold that the 766.16 grams attributed to Woods by Dotson was not in error.

Clausell attributes 288.08 grams to Woods: 8.08 grams from his own purchases in 1992 and 1993, A.J.A. at 717,1484, and 280 grams during the aforementioned "cook" in the winter of 1994. Woods claims this testimony is not credible due to Clausell's drug use. We have already ruled in *Gibbs* that Clausell's drug use does not make reliance on his testimony clear error. *See Gibbs*, 182 F.3d at 445. Defendant's charges of collaboration between Dotson and Clausell are wholly unconvincing. Neither do we believe the district court erred when it found the winter cooking incident observed by Clausell to be separate from the spring and fall cooking incidents that took place at Dotson's residence. Therefore, we hold that the attribution of 288.08 grams to Woods by Clausell was not in error.

Gladden attributes 100.4 grams to Woods, eight grams in 1993 and 92.04 grams in 1994. A.J.A. at 862-67, 876-77, 1487-88. Woods argues that Gladden's amounts are mathematically impossible and internally inconsistent. This argument is without merit. The presentence report attributes 184.08 grams to Woods based on a quarter ounce sale of crack once a week for twenty-six weeks. This is a conservative estimate based upon Gladden's testimony that he bought from Woods during the winter to summer of 1994 about a quarter ounce "every three or four days." A.J.A. at 878. To avoid double counting, this amount partially discounts the amount that could have been attributed to the winter cooking session in 1994, leaving the 92.04 figure. A.J.A. at 1488. We hold that the district court did not err in attributing 100.4 grams to Woods from Gladden's testimony.

Crockett attributes 36.4 grams to Woods. This amount is based on two half-gram sales in 1991 and five quarter-ounce purchases in 1994. A.J.A. at 1242-43, 1483. Berger attributes 21 grams to Woods, derived from Berger's testimony that he received 3.5 grams from Woods on six occasions. A.J.A. at 942-43, 1489. In both of these cases, the witnesses described the transactions with specificity. Defendant's attempts to impeach their credibility are unpersuasive. Therefore, we hold the full 57.4 grams was properly attributed to Woods.

To summarize, we hold that the district court's calculation of 834.2 grams attributed to Needum and 1251.48 grams attributed to Woods was not clear error.

### C. Firearm Enhancement

Woods and Chad Gibbs both argue that the government has failed to show by a preponderance of the evidence that either of them "possessed" a firearm to support the enhancement under U.S.S.G. § 2D1.1(b)(1). We review a district court's factual finding that a defendant possessed a firearm during a drug-trafficking offense for clear error. *United States v. Saikaly*, 207 F.3d 363, 366 (6th Cir. 2000). The district court may apply the § 2D1.1(b)(1) sentence enhancement when a defendant is resentenced after the vacatur of an 18 U.S.C. § 924(c) conviction. *United States v. Clements*, 86 F.3d 599, 601 (6th Cir. 1996).

The commentary to § 2D1.1(b)(1) states the firearm enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.3. For the two-level § 2D1.1(b)(1) enhancement to apply, the government must establish that 1) the defendant actually or constructively possessed the weapon, and 2) such possession was during the commission of the offense. *See United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir. 1991). Constructive possession is established if the defendant had "ownership, or dominion or

control over the [firearm] itself, or dominion over the premises where the [firearm] is located." *Id.* (internal quotation marks omitted). Once the government establishes possession during an offense, it creates a presumption that the weapon was connected to the offense. The defendant must then show that it was "clearly improbable" that the weapon was connected with the crime. *Sanchez*, 928 F.2d. at 1460.

As evidence that Woods possessed a firearm to protect his drug trade, the government presented a Ruger 9mm pistol, a Cobra M-11 9mm firearm, and ammunition that investigators found under a bed and in a dresser located in an upstairs bedroom in Woods's residence. A.J.A. at 1274, 1284. The government easily showed that Woods constructively possessed the firearms. Woods's name appeared on the lease to the premises. A.J.A. at 1125. In the house, agents found a digital scale, a pager invoice in the name of Antwan Woods, a photograph of Woods holding a firearm similar to one of the recovered weapons, and a notebook printed with several entries of names and dollar amounts and the name "Trouble"[4] and "kilo." A.J.A. at 1122-23, 1290. In addition, a local resident saw Woods selling crack with a 9mm handgun on his person. A.J.A. at 1073-77. This circumstantial evidence is sufficient to establish constructive possession. *See Gibbs*, 182 F.3d at 424.

In response, Woods argues that the firearms located at his residence cannot be attributed to him because the home was not exclusively his residence, and that other individuals in the home were armed drug dealers. This speculation is not evidence and does not establish that it was "clearly improbable" that he possessed the firearms during the offense. The weapons were within easy reach had Woods wished to get them. Woods has failed to counter the weight of the government's evidence, and we hold that the district court did not err by enhancing his sentence.

---

[4] "Trouble" is Woods's nickname. A.J.A. at 158.