**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0053n.06
Filed: October 28, 2004

**03-3101**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MIMOZA PREKA, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE BOARD |
| | ) | OF IMMIGRATION APPEALS |
| JOHN ASHCROFT, United States | ) | |
| Attorney General, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

Before: KENNEDY, DAUGHTREY, and COOK, Circuit Judges.

**PER CURIAM.** The petitioner, Mimoza Preka, is an Albanian citizen who entered the United States without inspection in 1997 and who now concedes removability. Before this court, she contends that she possesses a well-founded fear of persecution if forced to return to her homeland, and she seeks reversal of a summary disposition by the Board of Immigration Appeals denying her applications for asylum and withholding of removal.[1] The Board upheld a ruling by the immigration judge, who likewise denied asylum, finding an absence of "complete and absolute credibility" in regard to the petitioner's testimony about

---

[1]Before the immigration judge and Board of Immigration Appeals, Preka also sought both relief under the United Nations Convention Against Torture and voluntary departure from the United States. She no longer contests the adverse decisions rendered against her in those regards; consequently, those claims are not before us on appeal. *See*, *e.g.*, *United States v. Hough*, 276 F.3d 884, 891 (6th Cir. 2002) (arguments not briefed on appeal are deemed abandoned).

past persecution and concluding that conditions in Albania had changed dramatically in the years since Preka left, to such an extent that future persecution could not be established simply by a past history of harassment in her home country. Although it appears that Mimoza Preka is the only member of her immediate family who has been denied legal entry into the United States at this point, we are constrained by the limited nature of our review and must affirm the decision of the Board of Immigration Appeals, which in turn upheld the ruling by the immigration judge.

That standard of review requires us to sustain a decision of the Board of Immigration Appeals denying asylum and withholding of removal if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). *See also* 8 U.S.C. 1252(b)(4)(B) ("administrative findings of fact are conclusive unless any reasonable adjudication would be compelled to conclude to the contrary"). As we have recognized, "Under this deferential standard, we may not reverse the Board's determination simply because we would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001); *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998). Rather, to overturn a Board ruling, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1 (emphasis in original).

Pursuant to the provisions of 8 U.S.C. § 1158(b)(1), the attorney general *may* grant asylum to an individual if that person is a "refugee," defined by statute to be "any person

who is outside any country of such person's nationality . . . and who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) and (B). Thus, resolution of any request for asylum involves "a two-step inquiry: first, whether the petitioner is a 'refugee' within the meaning of the statute, and second, whether the petitioner merits a favorable exercise of discretion by the Attorney General." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994).

Preka offered testimony in this matter that she, her father, and her younger sister, Valbona, were involved in political activities in Albania after the fall of that country's ruling Communist Party in 1990. According to her account, in the early days of transition to a less totalitarian regime, the family members aligned themselves with the Democratic Party, participated in party demonstrations, and, as a result, were warned by police officials to cease their political activities. Once the Democratic Party won the national elections in Albania in 1992, however, the petitioner and her family were "happy with the changes" they helped bring to the country, although Mimoza's observation of the increasing influence of former Communists in the Democratic Party caused that euphoria to be short-lived.

According to the petitioner, she, her father, and her sister eventually became members of the Balli Kombetar party, or the National Front. The break from the Democratic Party, however, brought additional troubles. Mimoza indicated that she and Valbona were asked by a Democratic Party member to spy on their father's political

activities and said that they were later approached by three men who warned them not to write a contemplated article about the Democratic Party's association with bands of criminals terrorizing the country. The petitioner also testified that the individual who did finally write the article was arrested and imprisoned by the Democratic Party for expression of his viewpoint.

In May of 1996, Preka's father, mother, and youngest sister won a visa lottery in the country and came to the United States, leaving only Mimoza and Valbona in Albania. The petitioner described how, approximately one year later, while she was away from the home she shared with her sister, four armed men forced their way into the house, fired guns into the ceiling, accused the family of being spies and anarchists, and beat Valbona before one of the men brutally raped her. She said that because of their fear and the cultural shame felt by rape victims, they did not seek medical treatment for her sister or report the incident to the authorities. Instead, the petitioner said, she contacted a cousin in Tirana who purchased two counterfeit passports for both sisters, allowing them to flee the country and come to the United States to join the rest of their family. Valbona has since been granted asylum by a different immigration judge outside this circuit.

The petitioner now asserts that this testimony establishes that she has suffered persecution in the past for her political beliefs and, in addition, that she has a well-founded fear of future persecution should she return to Albania. Although relevant statutes and regulations do not offer a workable definition of the concept of "persecution," we have held

that the term encompasses "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch*, 146 F.3d at 390.

Possibly recognizing that warnings to curtail support of the Democratic Party and a later, single threat not to proceed with an article critical of the party do not alone rise above the level of "verbal harassment or intimidation," the petitioner asserts in her asylum application that she, her father, and her sister "were arrested, detained, interrogated, [and her] sister was raped . . . between 1990-1997." However, neither the testimony of Mimoza and Valbona Preka at the asylum hearing nor the affidavits submitted by the sisters support the claim that the women were ever arrested, detained, or interrogated by officials in Albania during the relevant time period. Partly for that reason, the immigration judge concluded that the petitioner was not a credible witness in these proceedings.

But even if Mimoza Preka were considered completely credible, we could not hold that the immigration judge erred in denying the asylum request. Although the rape of Mimoza's sister could constitute a component of a pattern of violence against family members that can, under some circumstances, establish persecution, *see Ouda v. INS*, 324 F.3d 445, 454 (6th Cir. 2003), the testimony and evidence before the immigration judge established that the rape occurred at a time when Albania was in a state of anarchy and without a police force. As such, the violent act committed against Valbona Preka cannot

be considered a politically-motivated attack condoned by a non-existent national government.

Moreover, according to documents produced by the United States State Department, immediately after the petitioner's flight from Albania in 1997, the Socialist Party came to power in that country. Although the State Department report notes that the Socialists have subsequently been accused of harassing members of the *Democratic Party* that Mimoza Preka fears, and even of killing one Democratic Party member, neither the petitioner nor the State Department has identified any evidence that the Albanian government is engaging in systematic harassment or persecution of any Balli Kombetar supporters. Given the change in the political conditions in Albania, the immigration judge did not err in concluding that Mimoza Preka cannot establish a well-founded fear of future persecution in her homeland. The petitioner, therefore, is not eligible for a grant of asylum under applicable law.

That law does provide that an asylum "applicant who satifies his or her burden of establishing past persecution is presumed to have a well-founded fear of persecution." *Mikhailevitch*, 146 F.3d at 389. The presumption may be rebutted, however, "by establishing by a preponderance of the evidence that since the persecution occurred, conditions in the applicant's country have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he [or she] were to return." *Id.* (internal quotation marks and citation omitted). Thus, because immigration officials in this

case were able to prove that the petitioner would no longer be subject to persecution in her homeland due to her political beliefs, proof that Preka had suffered past persecution by the government would not necessarily compel a grant of asylum in this case.

A plea for withholding of removal of an alien imposes an even more stringent standard of proof upon the petitioner than does a request for asylum. *See Mikhailevitch*, 146 F.3d at 391; *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431-32 (1987). Pursuant to the provisions of 8 U.S.C. § 1231(b)(3)(A), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Because the evidence in this case does not compel a conclusion that the petitioner possesses a well-founded fear of future persecution in Albania, "it therefore follows that [s]he cannot satisfy the more stringent standard for withholding of [removal]." *Mikhailevitch*, 146 F.3d at 391.

For the reasons set out above, we AFFIRM the denial of the petitioner's request for asylum and withholding of removal.