NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0498n.06

No. 06-2433

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 20, 2009**
LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF MICHIGAN |
| DEWAYNE BOYD, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

BEFORE: CLAY and ROGERS, Circuit Judges, and JORDAN, District Judge.[*]

**ROGERS, Circuit Judge.** DeWayne Boyd appeals his conviction for three counts of mail fraud and one count of theft of government property on the ground that the evidence is not sufficient for conviction. Because the evidence presented at trial is sufficient to sustain the jury's verdict, Boyd's conviction is affirmed. Boyd also appeals his sentence; however, the argument he offers is so deficient as to constitute forfeiture.

**I.**

At the time of the events giving rise to this case, DeWayne Boyd worked as a staffer for United States Representative John Conyers. Boyd was responsible for planning and raising funds

---

[*]The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

for a conference for African-American farmers. Boyd conducted these activities under the auspices of the National Organization of Black Farmers ("NOBF"), an unincorporated entity with a bank account for which Boyd was the sole signatory. Representative Conyers's general counsel, Sydney Rooks, assisted Boyd with the preparations.

Boyd sought to raise funds from government and private sources and arranged for various vendors to provide services for the conference, which he anticipated would attract well over one thousand participants. However, Boyd did not succeed in raising funds to cover the cost of the conference or in attracting participants to the event. Boyd raised approximately $80,000—$40,000 from various agencies of the Department of Agriculture, $25,000 from Bank of America, and approximately $15,000 from various small donors and registration fees—much of which did not enter his possession until after the conference.

Shortly before the conference, two large vendors demanded deposits in order to guarantee their services. Aramark, which was under contract to provide meals worth $102,000, requested $76,000. Freeman Decorating, which was under contract to provide almost $20,000 in services, requested $9,000. Checks bearing Boyd's signature were sent to both vendors via FedEx. Rooks testified that she prepared the checks at Boyd's direction and that she insisted that Boyd verify the account balance before the checks were sent. Boyd testified, with regard to the $76,000 check, that Rooks removed a pre-signed check from his desk and sent the money without his authorization. Although the NOBF account did not contain funds to cover these checks, Aramark and Freeman

Decorating accepted the checks and provided their services at the conference. The checks were not returned for insufficient funds until after the conference.

Following the conference, Boyd received sums totaling $25,000 that were traceable either directly or indirectly to USDA. He also received $25,000 from Bank of America. Between May and July, Boyd paid a number of legitimate expenses from the NOBF account using cashier's checks and wire transfers. After July, Boyd made all further withdrawals in cash. In October, four months after the conference, Boyd participated with Rooks in soliciting the remaining $15,000 that USDA had promised to provide. USDA sent the $15,000, which was deposited in the NOBF account. Of the $79,550 ultimately deposited in the account, Boyd withdrew $42,171 in cash over the course of several months. Federal investigators could trace only $3,880 of that cash to conference expenses.

Boyd testified that he used the cash to make various payments to international vendors via Western Union transfers, postal money orders, international money orders, and direct cash payments. He did not present records to support these claims. Instead, he testified that Rooks had removed the documents supporting his claims from the Congressman's office. Using records from the NOBF account and Boyd's personal account, the prosecution presented evidence that, rather than using the money to pay conference expenses, Boyd systematically moved funds from the NOBF account to his personal account.

Boyd was indicted on April 27, 2004, on five counts of mail fraud, one count of theft of government property, one count of bankruptcy fraud, one count of making false declarations before a court, and one count of making false statements. The case went to trial in December 2004. On

motion of the prosecution, the court dismissed two of the mail fraud counts at the start of the trial. A jury convicted Boyd of the remaining seven offenses. Rooks testified against Boyd at the trial as the prosecution's principal witness.

The court set Boyd's sentencing hearing for April 12, 2005. During the interim between conviction and sentencing, Boyd fraudulently obtained a passport and fled to Ghana. After Boyd was apprehended and returned to America, he was convicted of one count of failure to appear at sentencing. The court imposed a single 76-month sentence for the failure to appear and the underlying crimes. The court calculated the applicable Sentencing Guidelines range for the underlying crimes at 41 to 51 months, taking into account an enhancement under USSG § 3C1.1 for obstruction of justice. Section 3C1.1 also governs the sentence enhancement for failure to appear when the defendant is sentenced jointly both for an underlying offense and for failure to appear at sentencing. USSG § 2J1.6 cmt. 3. Because Boyd already had received the § 3C1.1 enhancement independently of his failure to appear, the sentencing court decided to grant an upward departure so that the failure to appear would not go unpunished. The court based the upward departure on the number of months of imprisonment Boyd would have received had the underlying crimes and the failure to appear been sentenced separately. The court attributed 46 months of the sentence to the underlying crimes and 30 months to the failure to appear.

Boyd appealed the two portions of the sentence separately. We already have rejected his challenge to the 30-month sentence for failure to appear. Amended Order, *United States v. Boyd*,

No. 06-2281 (6th Cir. Oct. 27, 2008).  In this appeal, Boyd challenges his convictions for four of the underlying offenses and the 46-month portion of his sentence.[1]

## II.

The evidence in this case was sufficient to convict Boyd of three counts of mail fraud and one count of theft of government property.  For each of the three mail fraud counts, the government needed to prove only two elements:  that Boyd (1) engaged in a scheme to defraud and (2) used the mails in furtherance of that scheme.  *See United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005).  The government offered various forms of proof to support the convictions.  Count 1 of the indictment alleged that Boyd knowingly caused a check for $76,000 payable to Aramark to be deposited for delivery by a private interstate carrier for the purpose of executing a scheme to defraud.  The prosecution presented evidence that, after learning that Aramark would not provide services unless it received a $76,000 deposit, Boyd made arrangements to send payment in that amount.  Rooks testified that she prepared a letter and a check, and Boyd signed the check.  She further testified that Boyd, who was the only person with access to the NOBF account, led her to believe that the account contained funds to cover the check.  Count 2 of the indictment alleged the same facts with regard to a $9,000 check payable to Freeman Decorating.  Again, Rooks testified that Boyd directed her to prepare a letter and check to Freeman Decorating.  Boyd signed the check, which was then FedExed to Freeman Decorating.  The NOBF account did not contain funds to cover either

---

[1]Boyd does not challenge his conviction with respect to the offenses of bankruptcy fraud, making false declarations before a court, and making false statements.

check, but neither check was returned for insufficient funds until after both vendors provided their services at the conference. Boyd presented a different narrative in which Rooks was the wrongdoer, but the jury credited Rooks's testimony rather than Boyd's.

Boyd's convictions stand because they are based on the jury's choice to credit Rooks and not to credit Boyd. The standard of review for determining the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Rooks' testimony, if credited, is sufficient to sustain the verdict finding Boyd guilty of using the mails to further a scheme to defraud. When determining whether sufficient evidence supports the verdict, this court does not "weigh the evidence presented [at trial], consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *United States v. M/G Transport Services, Inc.*, 173 F.3d 584, 588-89 (6th Cir. 1999). Instead, this court "draw[s] all available inferences and resolve[s] all issues of credibility in favor of the jury's verdict." *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998).

The prosecution also presented evidence sufficient to sustain the verdict on Count 3 of the indictment, which alleged that Boyd used the mails to invoice USDA for $15,000 as part of a scheme to defraud, and Count 4, which alleged that Boyd used false pretenses to steal $15,000 belonging to the United States. The prosecution presented evidence that after the conference Boyd participated in mailing a letter and invoice to the National Resources Conservation Service of USDA requesting payment of $15,000. Rooks testified that, believing the money would be used to pay legitimate

conference expenses, she helped Boyd prepare and send this letter and invoice. An official from the Natural Resources Conservation Service testified that his department would not have followed through on its commitment to send the money had it not received this documentation.

The evidence at trial indicated that although USDA disbursed $15,000 after receiving the letter and invoice, the conference's remaining debtors did not receive further payment. Instead, Boyd withdrew the money in cash and converted it to his own use. A Special Agent from the Office of the Inspector General testified that Boyd withdrew $42,171 from the NOBF account in cash, only $3,880 of which could feasibly be attributed to conference expenses. The agent traced for the jury a pattern of transactions in which Boyd would make a cash withdrawal from the NOBF account followed by a cash deposit into his own account on the same day. This evidence, viewed in the light most favorable to the prosecution, supports a finding that Boyd committed the actions alleged in Counts 3 and 4 by using the mails to requisition $15,000 from an agency of the government then converting some or all of that money to his own use.

Boyd also argues that the trial court abused its discretion when it sentenced him, but his inadequate briefing on this issue constitutes forfeiture. Boyd makes this argument by incorporating by reference the brief he submitted in the appeal of his sentence for failure to appear. The court gave Boyd permission to incorporate all or part of that brief in his brief for the instant case, but that permission was abused here. The argument Boyd attempts to incorporate is a fact-bound one that pertains to the reasonableness of his 30-month sentence for failure to appear. The argument does

not address the reasonableness of the remaining 46 months, which is the portion of the sentence currently before the court.

Although in some circumstances courts allow appellants to incorporate arguments from other cases—for instance, Federal Rule of Appellate Procedure 28(i) allows appellants in consolidated cases to incorporate each other's arguments by reference—such an allowance does not permit an appellant to incorporate a fact-bound sentencing-calculation argument from a different context without offering any fact-specific arguments relating to the appellant's particular situation, as Boyd has done here. *See United States v. Hough*, 276 F.3d 884, 891 (6th Cir. 2002). By failing to specify what the appropriate Guidelines sentence for his underlying crimes should have been or why the sentence the district court imposed is unreasonable, Boyd forfeited this argument.

Even so, Boyd's claim fails on the merits because his sentence carries an unrebutted presumption of reasonableness. The Government and the district court agree, and Boyd has not contested, that the Guidelines range for Boyd's underlying crimes is 41 to 51 months. The portion of Boyd's sentence attributable to those underlying crimes is 46 months. A sentence properly calculated under the Guidelines is presumptively reasonable, *United States v. Vonner*, 516 F.3d 382, 389-90 (6th Cir. 2008) (en banc), and Boyd has not offered any argument to overcome this presumption.

**III.**

For the foregoing reasons, Boyd's conviction and sentence are AFFIRMED.