NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0170n.06

No. 23-1706

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 18, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| PAUL TASAIN THOMAS, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: MOORE, NALBANDIAN, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Paul Thomas pleaded guilty to unlawful possession of firearms. At sentencing, he asked for a noncustodial term, identifying his troubled childhood as the root of his criminal history, which he argued was overstated. The district court considered Thomas's mitigation arguments and determined that a below-guidelines sentence of 60 months comported with the relevant sentencing factors. Thomas argues that it should have been lower. But he does not demonstrate that the district court abused its discretion, so we affirm.

**FACTUAL BACKGROUND**

As the district court acknowledged, Paul Thomas struggled through a trauma-filled childhood. Both of his parents physically abused him, and his father went to prison for sexually abusing Thomas's sister and female cousin. Thomas began using drugs and alcohol at a young age, resulting in his severe substance abuse problems.

Unfortunately, Thomas's encounters with the criminal justice system also began when he was just a child and continued into his adulthood. Prior to the crime at issue in this case, he had four previous felony convictions, stemming from multiple instances of domestic violence, a physical incident with a police officer, and use of stolen checks. Most recently, Thomas served prison time for his third impaired driving offense. After serving that sentence, Thomas seemingly turned a corner. He began his own roofing company and employed several members of the community. Between 2015 and early 2022, he avoided any further convictions.

That changed in February 2022, when Thomas was caught selling stolen firearms. On February 11, Thomas told a government informant that he had firearms for sale and showed that person a stolen Taurus 9-millimeter pistol. Three days later, Thomas met with the informant and sold him a stolen Ruger .40 caliber pistol. Also on February 14, Thomas met with the informant again and sold the same Taurus 9-millimeter pistol he'd shown the informant three days earlier. On February 22, Thomas sold the informant yet another Taurus 9-millimeter pistol. That same month, Thomas drove on a suspended license and harassed workers at a gas station that he frequented.

Thomas pleaded guilty to three counts of possessing a firearm as a prohibited person in violation of 18 U.S.C. § 922(g)(1). The district court calculated the Guidelines range as 63 to 78 months. Thomas did not dispute the Guidelines calculation, but he requested a sentence of probation. Through counsel, he submitted a sentencing memorandum, which the district court complimented as being "very extensive" and "well-written." R. 39, PageID 306, 307. He attached 16 exhibits, including eight letters of support, medical records documenting his mental health struggles, two articles on childhood trauma, and a chart labeled "Noncustodial Sentences for People Convicted of Possessing Firearms as a Felon."

In arguing for a noncustodial sentence, Thomas emphasized that his criminal history was overstated. As an initial matter, Thomas argued that the criminal history points he accrued before age 25 should not count in calculating his criminal history category because his brain had not fully matured. Thomas further contended that points from his purportedly non-dangerous convictions should not count either. He portrayed his firearm offenses as "uncharacteristic." Additionally, because Thomas sobered up while on pretrial release, he asked the court to discount his convictions that occurred while he was using drugs. Thomas's reconstruction of his criminal history score, if accepted, would have put him in criminal history category III (instead of VI) and resulted in a Guidelines range of 37 to 46 months.

Moreover, Thomas asked the court not to apply the stolen firearm enhancement and the enhancement for conduct involving at least three firearms. Without those enhancements, Thomas's offense level would have decreased to 15 (from 19), resulting in a Guidelines range of 24 to 30 months. Thomas's proposal, if accepted, would have made his request for a probationary downward variance appear less dramatic.

The district court was not persuaded by Thomas's arguments for a drastic departure or variance from the advisory Guidelines range. It varied downward slightly, imposing a sentence of 60 months. Thomas timely appealed.

**ANALYSIS**

Thomas attacks his sentence as both procedurally and substantively unreasonable. The parties agree that Thomas preserved his procedural reasonableness challenge. And Thomas did not have to object to preserve his substantive reasonableness challenge. *See United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). Accordingly, we review both aspects of Thomas's appeal under the abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

I.       **Procedural Reasonableness**

Thomas claims that the district court summarily rejected his request for a downward departure based on an overstated criminal history without sufficiently considering his mitigating evidence. But the sentencing transcript shows that the court reviewed all of Thomas's mitigation evidence and adequately explained the sentence, including its reasons for accounting for his entire criminal history.

In our review, we examine whether the sentencing transcript shows that the court "listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *United States v. Wallace*, 597 F.3d 794, 804 (6th Cir. 2010) (quoting *Vonner*, 516 F.3d at 387). A district court does not have to "give the reasons for rejecting any and all arguments by the parties for alternative sentences," but it must generally explain its basis for rejecting the defendant's nonfrivolous arguments for a lower sentence. *Id.* (quoting *Vonner*, 516 F.3d at 387).

Thomas argues that the district court dismissed his mitigating evidence, including his childhood trauma, work history, and rehabilitative efforts. But the transcript reveals the opposite. The first thing the court addressed in its sentencing monologue was Thomas's background, most notably his "challenging upbringing." Sent'g Tr., R. 39, PageID 322. The court went on to credit Thomas for his positive adjustment to pretrial supervision and excellent work history. And the court later acknowledged Thomas's "glowing" letters of support and potential to be a productive member of society. *Id.*, PageID 327. The court did not, as Thomas claims, "disregard [his] voluntary participation in treatment for seven months." Appellant Br., App. R. 11, at 31. To the contrary, the court acknowledged that Thomas had "done great" on pretrial supervision but in the

4

past had "reverted back to drinking and substance abuse"—which "clouded" his mind and led him to criminal behavior, including the offenses in this case. Sent'g Tr., R. 39, PageID 324–26.

The transcript also reveals the district court's reasons for rejecting Thomas's argument that this mitigation warranted a drastic departure or variance from the Guidelines range. Thomas's criminal history was impossible for the court to overlook. To start, the court specifically rejected the defense's notion that Thomas's impaired driving convictions weren't dangerous, commenting "it's a wonder that you didn't have any accidents or harm or injure someone when you were drinking and driving." *Id.*, PageID 323. The court went on to say that Thomas had "multiple opportunities" to "do the right thing." *Id.* In particular, the court faulted Thomas for illegally selling guns after his prior prison sentence. The seriousness of the offenses played a large role in the district court's foreclosing a probationary sentence. Thomas's conduct would have created a danger to the community if the guns he sold had fallen into the wrong hands. *Cf. United States v. Jeter*, 721 F.3d 746, 757–58 (6th Cir. 2013). Ultimately, the court made clear that Thomas's mitigating evidence did not outweigh these aggravating factors. Sent'g Tr., R. 39, PageID 328.

Thomas's remaining counterarguments are also unavailing. *First*, Thomas seizes on the district court's comment that it "didn't get to all the articles that were submitted" to argue that it did not adequately consider his departure request and ignored his mitigation evidence. *Id.*, PageID 306. In context, however, the court's comment showed a subject-matter familiarity with Thomas's articles about childhood trauma, substance abuse, and brain development. In fact, referencing the articles, the court said, "I've seen most of them before." *Id.* And the court rejected Thomas's probation request with a clear understanding of the relationship between the articles and his argument. After summarizing Thomas's background, the court acknowledged that "a lot of it is very mitigating." *Id.*, PageID 325. The district court's explanations reflect an understanding of the

5

impact of Thomas's troubled childhood, brain development, and substance abuse and their relationship to his mitigation argument. *See United States v. McAllister*, 491 F. App'x 569, 572 (6th Cir. 2012). Moreover, Thomas also acknowledges that the court studied the individualized support letters that he submitted. In short, the district court considered Thomas's mitigation arguments—including the subject matter of the articles he attached to his sentencing memorandum—in exercising its sentencing discretion. *See Rita v. United States*, 551 U.S. 338, 356 (2007).

*Second*, Thomas argues that the district court failed to address his arguments that the stolen firearm and multiple guns enhancements shouldn't apply to his sentence. But nothing in the record shows that the court needed to elaborate further on its decision to include those enhancements in Thomas's advisory Guidelines range calculation. As a factual matter, Thomas's offense conduct involved at least three firearms, two of which were stolen. Thomas did not formally object to the portions of the presentence report stating as much, so the district court was entitled to rely on those facts as true. *See United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007); *United States v. Stovall*, 337 F.3d 570, 574 (6th Cir. 2003).

*Lastly*, Thomas's legal arguments against the enhancements fail. Thomas claims the government did not prove he knew the firearms were stolen, so the corresponding enhancement cannot apply. But we have never held that the government must satisfy such a knowledge requirement for this enhancement. *United States v. Gibson*, 817 F. App'x 202, 205 (6th Cir. 2020) (collecting cases). Additionally, Thomas never presented evidence that he didn't know two of the guns he sold to the informant were stolen. *See Geerken*, 506 F.3d at 467. Against that backdrop, Thomas's argument against the stolen firearm enhancement fails. *See id.*

Thomas further argues that the number-of-guns enhancement together with the firearm-trafficking enhancement amounts to impermissible double counting based on the same conduct. A district court may properly impose two sentencing enhancements for the same conduct if each enhancement punishes distinct aspects of that conduct. *United States v. Hitch*, 58 F.4th 262, 264–65 (6th Cir. 2023). In Thomas's case, the number-of-guns enhancement punishes Thomas for his own unlawful possession of more than three firearms, while the firearm-trafficking enhancement punishes Thomas for unlawfully selling those guns to someone else. U.S.S.G. §2K2.1(b)(1)(A), (b)(5). There was no double counting, and the district court did not abuse its discretion when it applied both enhancements.

## II. Substantive Reasonableness

In his substantive unreasonableness challenge, Thomas reiterates his arguments that the district court failed to give sufficient weight to his mitigating circumstances and gave undue weight to his criminal history.

A defendant may show substantive unreasonableness if the district court selected the sentence arbitrarily, considered impermissible factors, failed to consider relevant factors, or gave an unreasonable amount of weight to any pertinent factor. *United States v. Mahbub*, 818 F.3d 213, 232 (6th Cir. 2016). A defendant challenging a below-guidelines sentence as substantively unreasonable faces a heavy burden. *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013).

Thomas's substantive-reasonableness challenge amounts to a repackaging of his failed procedural-reasonableness arguments. Thomas disagrees with the district court's sentence, but after reviewing the record, we cannot say that the district court gave unreasonable weight to Thomas's criminal history or failed to consider any relevant factor. *See United States v. Jackson*, 466 F.3d 537, 540 (6th Cir. 2006). The court concluded that, even with the mitigation, a 60-month

7

sentence was sufficient but not greater than necessary for Thomas's federal firearm offenses after he was undeterred by his prior prison term. There was no abuse of discretion in the court's weighing of the applicable sentencing factors.

## CONCLUSION

We affirm the district court's 60-month sentence.